RECORD NO. 14-1492

In The

# United States Court Of Appeals
# For The Fourth Circuit

## UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF POTOMAC VALLEY BRICK AND SUPPLY COMPANY,

*Plaintiff – Appellant,*

v.

## GRAHAMS CONSTRUCTION, INCORPORATED; THE GUARANTEE COMPANY OF NORTH AMERICA USA,

*Defendants – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT GREENBELT

————————————

## BRIEF OF APPELLANT

————————————

**Frank J. Emig**
**LAW OFFICES OF FRANK J. EMIG**
**Laurel Lakes Executive Park**
**8337 Cherry Lane**
**Laurel, MD 20707**
**(301) 345-7002**

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1492__          Caption: <u>US f/u/b/o Potomac Valley Brick & Supply Co. v.</u>
                                  <u>Grahams Construction, Inc., et al.</u>
Pursuant to FRAP 26.1 and Local Rule 26.1,

__Potomac Valley Brick and Supply Company__
(name of party/amicus)

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                 ☐ YES ☑ NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                         ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: _Frankf Ening_                          Date: ____May 27, 2014____

Counsel for: Potomac Valley Brick and Supply Co

## CERTIFICATE OF SERVICE
**************************

I certify that on _____May 27, 2014_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Christoper M. Anzidei, Esq.
Law Offices of Christopher Anzidei, PLLC
8381 Old Courthouse Road, Ste. 160
VIENNA, VA  22182

Jason T. Strickland, Esq., Ward and Smith, P.A.
5430 Wade Park Boulevard, Ste. 400
Raleigh, NC  27636-3009

_Frankf En_                                        ____May 27, 2014____
(signature)                                              (date)

- 2 -

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

JURISDICTIONAL STATEMENT ...................................................................... 1

STATEMENT OF THE ISSUE ............................................................................ 2

STATEMENT OF THE CASE ............................................................................. 2

SUMMARY OF ARGUMENT ............................................................................ 8

ARGUMENT ....................................................................................................... 10

    I.   STANDARD OF REVIEW ................................................................. 10

    II.  PVB IS A THIRD-PARTY CREDITOR BENEFICIARY OF
          GRAHAMS' AUGUST 22, 2012 EMAIL TO JMM .......................... 10

    III.  GRAHAMS' PROMISE TO PAY PVB WAS SUPPORTED BY
          CONSIDERATION ............................................................................ 22

    IV.  ENTRY OF JUDGMENT AGAINST GRAHAMS SHOULD BE
          PURSUANT TO Fed. R. Civ. P. 54(b) .............................................. 24

CONCLUSION .................................................................................................... 27

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .................................. 28

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

Page

*Braswell Shipyards, Inc. v Beazer East, Inc.*, 2 F.3d 1331(4th Cir. 1993) ............. 25

*Continental Oil Co. v. Horsey*, 175 Md. 609 (1939) ............................................... 13

*CR-RSC Tower 1, LLC v. RSC Tower 1, LLC*, 429 Md. 387 (2012) ....................... 14

*Dickerson v. Longoria*, 414 Md. 419 (2010) ......................................................... 22

*Faulkner v American Casualty Company of Reading, Pa.*,
   85 Md. App. 595 (1991) ..................................................................................... 19

*Hamilton & Speigel, Inc. v. Board of Education of Montgomery County*,
   233 Md. 196 (1963) ........................................................................................... 16

*In re Estate of Fanning*, 333 N.E. 2d 80 (Ind. 1975) ............................................ 21

*Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670 (D. Md. 2010) ....... 13, 19, 20

*Lincoln Nat. Life Ins. Co. v Means*, 95 S.W. 2d 264 (Ky. 1936) ........................... 21

*Linz v. Schuck*, 106 Md. 220 (1907) .............................................................. 23, 24

*Lovell Land, Inc. v. State Highway Administration*, 408 Md. 242 (2009) ........ 16, 17

*Mackubin v. Curtiss-Wright Corp.*, 190 Md. 52 (1948) ................................... 10, 13

*Ohio Casualty Ins. Co. v Beckwith*, 74 F.2d 75 (5th Cir. 1934) ............................ 20

*Orteck Intern, Inc. v Transpacific Tire & Wheel Inc.*,
   704 F. Supp. 2d 499, 514 (D. Md. 2010) ........................................................... 12

*Shaw v Stroud*, 13 F. 3d 791 (4th Cir. 1994)............................................................. 10

*Shillman v Hobstetter*, 249 Md. 678 (1968).................................... 15, 16, 17, 18 19,

*Sy-Lene of Washington, Inc. v Starwood Urban Retail II, LLC*,
    376 Md. 157 (2003)............................................................................... 14, 15, 19

*W. Chelsea Bldgs., LLC v United States*, 109 Fed. Cl. 5 (2013),
    2013 WL 572559.......................................................................................20-21

*Weems v Nanticoke Homes, Inc.*, 37 Md. App. 544 (1977)..................................... 17

## Statutes

28 U.S.C. § 1291 ...................................................................................................... 1
28 U.S.C. § 1352 ...................................................................................................... 1
28 U.S.C. § 1367 ...................................................................................................... 1
40 U.S.C. § 3133 ...................................................................................................... 1
Md. Code Ann., Com. Law § 2-201 ....................................................................... 12

## Rules

Fed. R. App. P. 4(a)(1)(A) ....................................................................................... 1
Fed. R. Civ. P. 54(b)......................................................................................... 24, 27
Local Rule 109.2, U.S. District Court for the District of Maryland ........... 22, 25, 27

## Treatises

4 Corbin on Contracts, § 776 ................................................................................ 16
*Restatement (Second) of Contracts* § 302, Comment, Illustration 3...................... 14
*Restatement (Second) of Contracts* § 306, Comment a. ......................................... 20

## JURISDICTIONAL STATEMENT

Potomac Valley Brick and Supply Company ("PVB") filed suit in the United States District Court for the Southern District of Maryland, alleging that the defendants, Grahams Construction, Inc. ("Grahams") and The Guaranty Company of North America USA, were liable under the terms of a payment bond for unpaid material deliveries to a federal construction project. Jurisdiction for this Miller Act claim was pursuant to 28 U.S.C. § 1352 and 40 U.S.C. § 3133. PVB later amended its complaint to add a breach of contract claim against Grahams. The District Court had supplemental jurisdiction over this breach of contract claim under 28 U.S.C. § 1367.

On May 13, 2014, the District Court denied PVB's motion for summary judgment and granted defendants' cross motion for summary judgment as to both the bond claim and the breach of contract claim. PVB timely filed a notice of appeal to this Court on May 21, 2014. (JA 329). See Fed. R. App. P. 4(a)(1)(A).

This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which provides that "[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ..."

This appeal is from a final order or judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUE

Did the District Court err by concluding as a matter of law that PVB was not a third-party creditor beneficiary of a contract between Grahams and JMM Enterprises Co., Inc.?

## STATEMENT OF THE CASE

PVB initially filed this action as a Miller Act claim against Grahams and The Guaranty Company of North America USA. Based on information obtained during discovery, PVB was granted leave of court to file an amended complaint, which included as Count Two a new claim against Grahams only, alleging breach of contract. Thereafter, PVB filed a motion for summary judgment against Grahams with respect to both counts. A cross-motion for summary judgment was also submitted by Grahams.

PVB's dispositive motion was based upon a Statement of Undisputed Material Facts ("UMF"), of which the portions relevant to Count Two are as follows:[1]

"1.    Potomac Valley Brick and Supply Co. ("PVB") is a Maryland corporation with offices at 15810 Indianola Drive, Suite 100, Rockville, MD 20855. It sells brick and masonry related products.

\* \* \*

---

[1] PVB has included with the cited references in the UMF, the appropriate designation to the Joint Appendix ("JA").

2

3.    Grahams Construction, Inc. ("Grahams") is a North Carolina corporation with its principal place of business in that state. It is a general contractor in the field of commercial construction. Ex. 1, p. 8 (JA 35).

4.    The masonry subcontractor on this project, JMM Enterprises Co., Inc. ("JMM"), was formerly known as M&M Masonry Co., Inc. before changing its name to JMM. Ex. 4, p. 8 (JA 51), Ex. 8 (JA 84-85). Mike Grigsby, Sr., ("Grigsby") was the president of JMM. Ex. 4, p. 7 (JA 50).

5.    On or about September 30, 2011, the U.S. Army and Air Force Exchange Service awarded a contract to Grahams to construct a Shoppette convenience store at Andrews Air Force Base in Maryland. Ex. 1, p. 11 (JA 36), Ex. 9 (JA 86-88).

* * *

7.    Grahams entered into a subcontract with JMM to perform the masonry portion of the Shoppette store. Ex. 1, p. 15 – 16 (JA 37-38), Ex. 11 (JA 97-JA 106). JMM signed this subcontract on March 14, 2012. Under Attachment B to the subcontract, JMM was to "Supply and Install Materials to Build Masonry Walls per Plans and Specs". Ex. 11, p. 10 (JA 106). The subcontract amount that was to be paid to JMM was $253,955.00 since the requirement that JMM provide bonds for its work was eliminated. Ex. 11, p. 7 (JA 103).

## B.  GRAHAMS' GUARANTY OF THE PVB ACCOUNT

8.  On July 30, 2012, Grahams had just approved the type of masonry material that was to be used at the project and directed JMM to order it immediately.  Ex. 4, p. 98 (JA 172) and Ex. 12 (JA 111).  At this time, the project was already behind schedule.  JMM was originally to have begun laying brick in May, 2012.  Ex. 4, p. 104 (JA 62).  Rolan Monigold ("Monigold"), Graham's project superintendent, testified that there was a "… problem in getting the brick when I needed it in the beginning." Ex. 3, p. 38 (JA 47).

9.  On July 31, 2013, JMM applied for credit with PVB.  Ex. 5, p. 13 – 14 (JA 67-68), Ex. 13 (JA 112).   PVB reviewed and approved the opening of a credit account for JMM "[r]oughly around the same time they filled out and signed for our order." Ex. 5, p. 16 – 17 (JA 211-212).  The terms agreed to by JMM in the PVB credit application included the following provision:

> "Net balance is due thirty days from statement date.  Applicant agrees to pay interest at the rate of 1.5% per month on all overdue accounts and further agrees to pay all collection costs, including attorney's fees of 33% of the then unpaid balance of principal and interest if the account should be referred to an attorney for collection." Exhibit 13 (JA 112).

10.  Due to a serious injury sustained by his son in mid-August, 2012, Grigsby was concerned about JMM's ability to perform the subcontract since his son was going to supervise the job.  Ex. 4, p. 16 – 17 (JA 53-54), and 104 – 107

(JA 62-JA 65). He asked Monigold if JMM could be released from its contract.
Ex. 4, p. 105 (JA 63). On August 21, 2012 JMM called PVB and placed a verbal
order for the masonry material needed on this project. Ex. 4, p. 100 – 101 (JA 60-
61). Ex. 15 (JA 114-115). PVB then sent JMM a printed acknowledgement of this
order on August 21, 2012 for signing. On the following day, Grigsby told Mike
Heath, the general manager of construction for Grahams, that [it] should open its
own account with PVB, order the brick itself and use another masonry
subcontractor for installation. Ex. 4, p. 17 (JA 54) and 106 (JA 64). Rather than
delay delivery of the brick further by having Grahams seek and obtain credit
approval from PVB, as well as locate another masonry subcontractor, Heath sent
an email on August 22, 2012 to JMM to induce them to stay on the job and order
the brick which stated:

> Mike, Per our conversation this morning, Grahams Construction, Inc.
> will guarantee payment of the block and materials for this project that
> you have are going to purchase from Potomac Valley Brick for the
> Shoppette project at Andrews AFB, MD. This guarantee will be
> whether M&M Masonry performs the work associated with the
> masonry or due to schedule restraints we have to employ other masons.
> Ex. 4, p. 16 (JA 53), Ex. 14 (JA 113).

Grahams imposed no restrictions or conditions on this guarantee to JMM (formerly
known as M&M Masonry). UMF ¶ 10. (JA 55)

11. JMM then signed the written acknowledgement of its order on
August 22, 2012 that it had received from PVB on the prior day. Ex. 4, p. 15

(JA 52) and 101 (JA 61), Ex. 7 (JA 79).  Grigsby did not sign the order acknowledgement from PVB until he had already received the August 22, 2012 email from Grahams.  Ex. 4, p. 18-19 (JA 55-56).  Until the brick order acknowledgement was signed by JMM, PVB was able to cancel the order within ten days of August 21, 2012.  Ex. 15, p. 2, ¶ 1 (JA 114-115).

12.  On February 14, 2013, PVB wrote to Grahams regarding its account balance of $76,219.68 as of that date.  Ex. 5, p. 59 – 60 (JA 77-78), Ex. 17 (JA 116).  Grahams responded on February 15, 2013 and stated that "We have added Potomac Brick to the list of joint checks to be written in conjunction with JMM. These checks will be distributed no later than June 15, 2013."  Ex. 7 (JA 81).

* * *

30.  Despite a subcontract price of $253.955.00, Grahams only made three payments to JMM:

| | | |
|---|---|---|
| $75,000.00 | to JMM, dated 9/28/2 | |
| 2,484.75 | to JMM and Sunbelt Rentals, dated 2/15/13 | |
| 7,212.71 | to JMM and Howlin Concrete, dated 2/15/13 | |
| $84,697.46 | Total payments | Ex. 1, p. 18 – 20 (JA 39-JA 41), Ex. 11 (JA 97 and JA 103). |

## PVB CLAIM

31.  In October, 2012, PVB was paid the sum of $31,537.15 by JMM for the Shoppette project which paid invoices 3347696, 3347730 and 3348412.  Ex. 5, p.

30 – 31 (JA 69-70), 43 – 44 (JA 75-76), Ex. 18 (JA 117-JA 119). No further payments have been made to PVB.

32. The remaining balance due PVB for materials delivered to and/or ordered for the Shoppette project totals $93,560.70. Exhibit 7 (JA 79-JA 82).

33. With the exception of Invoice 3365296, all of the material described in the invoices listed in Ex. 18 (JA 117-JA 120) were received and used at the Shoppette project. Ex. 4, p. 21 – 23 (JA 57-JA 59), Ex. 23 (JA 121-122).

34. PVB Invoice No. 3365296 for $20,245.37 represents the portion of the order that JMM never requested be delivered to the Shoppette store and remains in the possession of PVB. Ex. 5, p. 37 – 38 (JA 73-74), Ex. 23 (JA 121-122). This material was specially ordered for this project and PVB tendered delivery on April 25, 2013. Ex. 5, p. 34 – 35 (JA 71-72), Ex. 23 (JA 73-74) and 24 (JA 123).

35. The PVB order acknowledgement provided:

> "4. SPECIAL PRODUCTION PRODUCT – All items are Special Production Product unless otherwise noted in the description. Special Production Product must be paid for in full even if some, or all quantities are not delivered to the job. Any material not delivered will be invoiced upon completion of the masonry work. Standard Potomac Valley Brick credit terms will apply." Ex. 15 (JA 115).

36. PVB has been able to dispose of a portion of the mortar still in its possession for which JMM is entitled to a credit in the sum of $2,903.34. Ex. 7 (JA 79-80).

37. The principal amount remaining due to PVB after this credit is applied is $90,657.36. Ex. 7 (JA 79-80).

38. Interest on this indebtedness at the rate specified in the credit agreement and the order acknowledgement through December 30, 2013 is $17,481.15. Ex. 7 (JA 80 and JA 83). Both of these documents also authorize the imposition of attorneys' fees."

The District Court issued a Memorandum Opinion which denied PVB's motion for summary judgment as to Counts One and Two and which granted Grahams' cross-motion as to both Counts. (JA 300). PVB noted a timely appeal of the District Court's entry of judgment in favor of Grahams as to Count Two of the Amended Complaint.

## SUMMARY OF ARGUMENT

The District Court erred when it determined that Grahams and JMM did not intend to make PVB the primary party in interest and privy to the promise contained in Grahams' August 22, 2012 email to JMM. The plain language of the email explicitly indicates that the parties did want to make PVB a third-party creditor beneficiary. The District Court incorrectly relied on the subjective intent of Grahams. Such reliance on the intent of the promisor was rejected in *Shillman*. The District Court should have confined its analysis to the language of the August 22, 2012 email, as corroborated by the intent of the promisee JMM. The

8

District Court also erred when it concluded that PVB could not be a third-party creditor beneficiary since it was unaware of the August 22, 2012 email. Knowledge of the agreement is not required in order for an entity to be a third-party beneficiary. Viewed in this manner, PVB was clearly a third-party creditor beneficiary and able to pursue its claim for unpaid material, interest and attorneys' fees against Grahams.

PVB further argues that this email was supported by sufficient consideration. Grahams guaranteed to pay PVB in order to get JMM to remain on the job and complete its scope of work as the masonry subcontractor, when JMM was refusing to return due to injuries sustained by its project superintendent. According to *Linz*, Grahams' guarantee was supported by valid consideration since JMM did return to the project, order the necessary material from PVB and finish its masonry work.

Lastly, PVB argues that if the District Court is reversed and the case remanded for entry of judgment against Grahams, such judgment should be pursuant to Fed. R. Civ. P. 54(b), while the matter of attorneys' fees is being considered by the District Court. There is no compelling reason, such as the possibility of fragmented appeals, to delay entry of a final judgment against Grahams for the principal amount of PVB's claim plus accrued interest.

## ARGUMENT

## I. STANDARD OF REVIEW

"The standard of appellate review for the granting or denial of a
summary judgment motion is *de novo*. Thus, the court of appeals uses
the same standard as the district court. A moving party is entitled to
summary judgment "if the pleading, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to material fact and that the
moving party is entitled to judgment as a matter of law." *Shaw v
Stroud*, 13 F. 3d 791, 798 (4th Cir. 1994)(quoting Fed. R. Civ. P.
56(c)).

Since the agreement that is the subject of this appeal was made in Maryland,

the laws of the State of Maryland apply. *Mackubin v. Curtiss-Wright Corp.*, 190

Md. 52, 57 (1948).

## II. PVB IS A THIRD-PARTY CREDITOR BENEFICIARY OF GRAHAMS' AUGUST 22, 2012 EMAIL TO JMM

In Count Two of its amended complaint, PVB asserted a breach of contract

claim against Grahams based on Grahams' August 22, 2012 email to JMM. The

circumstances that resulted in the promise contained in this email are undisputed.

Grahams was behind schedule on this project at the end of July, 2012. UMF ¶ 8.[2]

When Grahams finally approved the brick selection for this project on July 30,

---

[2] The UMF paragraphs that are cited in this Argument section appear in the
Statement of the Case portion of this brief, along with the supporting references to
the Joint Appendix.

2012, it directed JMM to order the brick immediately. UMF ¶ 8. JMM started this process by applying for credit the next day with PVB. UMF ¶ 9.

Thereafter, JMM's ability to perform suddenly became questionable. Grigsby's son was injured in mid-August, 2012, and Grigsby wanted to terminate JMM's subcontract with Grahams. Grigsby's son was to have supervised JMM's work at the project, but was no longer able to perform this task. Grigsby requested that Grahams open its own account with PVB, order the brick itself and hire another masonry subcontractor to install the brick. UMF ¶ 10.

Instead of delaying the project further by applying for credit and placing an order for the masonry with PVB, as well as locating a replacement masonry subcontractor, Grahams induced JMM to remain on the job and to order the brick through JMM's approved account with PVB. UMF ¶ 10. This inducement was in the form of an email from Mike Heath, Grahams' general manager of construction, to Mike Grigsby of JMM on August 22, 2012 which stated:

> Mike, Per our conversation this morning, Grahams Construction, Inc.
> will guarantee payment of the block and materials for this project that
> you have are going to purchase from Potomac Valley Brick for the
> Shoppette project at Andrews AFB, MD. This guarantee will be
> whether M&M Masonry performs the work associated with the
> masonry or due to schedule restraints we have to employ other
> masons. UMF ¶ 10.[3]

---

[3] Grahams apparently neglected to type "or" between "have are" on line 3 of this email.

11

Grahams' imposed no restrictions or conditions on this guarantee to JMM (formerly known as M&M Masonry). (JA 55). Based on this guarantee, JMM then signed the written acknowledgment of its order for masonry material and sent it to PVB on August 22, 2012. UMF ¶ 11. While JMM may have verbally ordered the masonry material from PVB on August 21, 2012, such order was not enforceable against JMM on that date since it was for more than $500.00 and there was no writing signed by the party against whom it was to be enforced. Md. Code Ann., Com. Law § 2-201(1). PVB responded with a written order acknowledgement on August 21, 2012, but the "merchant exception" in § 2-201(2) would not apply until ten days thereafter. Nor would the "part performance exception" in § 2-201(3) be applicable to the August 21, 2012 verbal order since this exception "… does not apply prospectively to ensure that goods will be delivered in the future or to establish an exclusive right to buy those goods." *Orteck Intern, Inc. v Transpacific Tire & Wheel, Inc.*, 704 F. Supp. 2d 499, 514 (D. Md. 2010). As a result, it was not until the receipt of the signed written acknowledgement by PVB on August 22, 2012 that there was a binding and enforceable contract between JMM and PVB for the purchase of masonry material.

Following receipt of this email from Grahams, JMM, besides placing the order with PVB, also remained on site as the masonry subcontractor. This guaranty of payment by Grahams was absolute since there were no terms

expressed which indicated some condition precedent to the liability of Grahams. Once the account of JMM was in default, PVB could pursue its claim against Grahams based on its guaranty without first giving notice of JMM's default or without first attempting to enforce the contract against JMM. *Continental Oil Co. v. Horsey*, 175 Md. 609, 613-14 (1939). Based on these undisputed facts, PVB alleged that it was a third-party creditor beneficiary of the August 22, 2012 contract between Grahams and JMM and entitled to be paid by Grahams for masonry material ordered for the Project, including interest and attorneys' fees.

"A third-party beneficiary may bring suit to enforce the contract even though he is not an actual party to it." *Jones v. Koons Automotive, Inc.,* 752 F. Supp. 2d 670, 689 (D. Md. 2010). In *Mackubin, supra* at 56-58, the Court of Appeals discussed the rights of third party beneficiaries to enforce a contract:

> … The Courts now generally recognize the right of a third-party beneficiary to sue on a contract made expressly for the benefit of either a donee beneficiary or a creditor beneficiary. A third person is a donee beneficiary where it appears that the purpose of the promise in obtaining the promise of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary. A third person is a creditor beneficiary where no purpose to make a gift appears and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary … [But] before [such] a stranger to a contract can avail himself of the exceptional privilege of suing for breach thereof, he must at least show that it was intended for his direct benefit … In order to recover it is essential that the beneficiary shall be the real promisee; *i.e.,* that the promise shall be made to him in fact, though not in

form. It is not enough that the contract may operate to his benefit.
It must clearly appear that the parties intend to recognize him as the
primary party in interest and as privy to the promise. (Internal
citations omitted), quoted in *Long Green Valley Ass'n v. Bellevale
Farms, Inc.*, 205 Md. App. 636, 653-54 (2012).

PVB was a third-party beneficiary of this August 22, 2012 email since

performance of Grahams' promise would have satisfied JMM's obligation to pay

PVB for materials ordered and delivered. In determining the intent of the parties,

"Maryland follows the law of objective contract interpretation. The court's duty is

to determine the intention of the parties as reflected in the terms of the contract.

Under the objective test of contract interpretation, 'the written language

embodying the terms of an agreement will govern the rights and liabilities of the

parties, irrespective of the intent of the parties at the time they entered into the

contract.'" *Sy-Lene of Washington, Inc. v Starwood Urban Retail II, LLC*, 376 Md.

157, 166 (2003) (Internal citations omitted). The clear and unambiguous language

of the email demonstrates that Grahams and JMM intended to recognize PVB as

the primary party in interest and privy to the promise. See also *Restatement

(Second) of Contracts* § 302, Comment, Illustration 3.

In its opinion, the District Court primarily relied upon *CR-RSC Tower 1,

LLC v. RSC Tower 1, LLC*, 429 Md. 387 (2012) and its discussion of third

beneficiary status. The Court erroneously ignored the plain terms of the

August 22, 2012 email and found that "… JMM and Grahams did not enter the

14

contract for Plaintiff's direct benefit. Grahams entered into the contract, and

agreed to pay JMM for materials that JMM ordered from Plaintiff, so that masonry

materials Grahams required to complete the Project would be available regardless

of whether JMM was released from its contract." (JA 324-325). The Court

determined that since the parties (or at least Grahams) did not have the requisite

intent to make PVB a third-party creditor beneficiary, it was merely an incidental

beneficiary and acquired no rights against Grahams. (JA 327).

The Court's holding on this issue and its dismissal of Count Two was legally

incorrect. It relied on Grahams' subjective intent rather than the specific language

of the email as required by *Sy-Lene*. The Court also disregarded the holding in

*Shillman v Hobstetter*, 249 Md. 678 (1968). In *Shillman*, minority shareholders in

a development company (the promisors) gave a letter to the FHA (the promisee) so

that the development company could obtain construction financing. The letter,

dated May 27, 1964, stated:

> 'The undersigned hereby guarantee to refund deposits made by
> contract purchasers of homes in Sections 9, 10 and 11 if the
> developer, Maryland City Corporation, fails to complete the
> dwellings and settle with the purchasers.'
>
> *Id.* at 683.

Thereafter the contract purchasers of these homes filed suit against the

minority shareholders alleging that they were donee beneficiaries and entitled to

recover their deposits. The Court first indicated that the same test was applied in

15

cases involving both creditor and donee beneficiaries. The standard to be used in both cases is "… the intention of the contract, revealed by its terms, in light of the surrounding circumstances. …" *Id.* at 688, quoting from *Hamilton & Speigel, Inc. v. Board of Education of Montgomery County*, 233 Md. 196 (1963). See also *Lovell Land, Inc. v. State Highway Administration*, 408 Md. 242 (2009)(intended beneficiaries include both the donee and creditor categories).

The Court in *Shillman* discussed at length the manner in which the intent of the contract is determined. It initially stated that the letter "… clearly identifies the class of persons to whom deposits would be refunded and provided that the [minority shareholders] would guarantee that refund. This is the primary and indeed the only purpose of the contract and, prima facie, these contract purchasers are donee beneficiaries." The Court then considered the testimony of the FHA's representative (the promisee) who stated that the purchasers "… were intended to be recognized as the primary parties in interest." *Id.* at 689. The Court did not consider the testimony of the minority shareholders (the "promisors"), based upon the following excerpt from 4 Corbin on Contracts, § 776:

> 'The recognition of a right in a third person is often thought to depend upon the intention of the contracting parties, particularly that of the promisee who pays for the promise in question, to confer a benefit upon him.'
>                               * * *
> 'In third party cases, the right of such party does not depend upon the purpose, motive or intent of the promisor. The motivating cause of his making the promise is usually his desire for the consideration

16

given by the promisee.  In few cases will he be moved by a desire to
benefit a third person.  If A buys Blackacre from B and promises B to
pay the price to C, he makes this promise in order to get Blackacre,
not to benefit C; and this is true whether C is a creditor of B's or is
B's dearly beloved daughter or is a home for imbeciles.'

\* \* \*

'How is it with the purposes and motives of the promisee?  If B
conveys Blackacre to A in return for A's promise to pay $1,000.00 to
B's dearly beloved daughter C, it will usually be a desire to make C
happy and comfortable that motivates B and causes him to convey his
land to A.  There is a purpose and intent to 'benefit' C by making her
a gift of money.  This 'intent to benefit' C is given weight by the
courts and the prevailing law is that C has a right against A.'
(Footnotes omitted.)

*Id.* at 689-90.

The Court then concluded that this was "… a clear—if not a classic – case of a

donee beneficiary contract." *Id.* at 690.

The letter in *Shillman* is very similar in substance to the Grahams' email.  In

exactly the same manner, the email from Grahams to JMM constitutes a creditor

beneficiary contract.  The email clearly identifies PVB as the entity whose invoices

will be paid and specifies Grahams as the party that was guaranteeing such

payment. *Lovell Land, supra* at 297-98. (The identification of the beneficiary is a

factor to consider.)  The payment of these invoices by Grahams would also satisfy

JMM's obligation to pay PVB. *Weems v Nanticoke Homes, Inc.*, 37 Md. App. 544,

552 (1977)(Creditor beneficiary status will only be found when "the accompanying

circumstances and performance of the promise will satisfy an actual or supposed or

17

asserted duty of the promisee to the beneficiary …")    Since the language of the instrument is the primary source for determining if PVB is a third-party beneficiary entitled to enforce Grahams' promise according to *Shillman*, the inquiry need go no further. *Id*. at 688. By virtue of the language in this email, PVB has established a prima facie case as a creditor third-party beneficiary against Grahams that has never been rebutted *Id*. at 689.

*Shillman* does allow the Court to consider the surrounding circumstances in order to confirm the intent of the parties and specifically the intent of JMM in its capacity as promisee. In this regard Grigsby testified:

> "A. I'm referring to Grahams. I wanted to make sure that Grahams would pay them if we did not do the work and my material was sitting on the job site and some other masonry company was laying it.
>
> Q. And pay them means PVB –
>
> A. PV –
>
> Q. Potomac Valley Brick?
>
> A. Potomac Valley Brick, make sure they got their – paid in full."

(JA 180)

This intent by JMM to benefit PVB confirms the language in Grahams' email and underscores the fact that PVB was the primary party in interest in this agreement.

The District Court erred when it failed to confine its analysis to the specific language in the August 22, 2012 email that was corroborated by the testimony of

Grigsby regarding his intent to get PVB paid. Instead, the District Court improperly considered and relied on Grahams' subjective intent in sending this email when it stated that Grahams only wanted to make certain that the masonry material would be available for the project. (JA 324-325). Such reliance is contrary to the holdings in *Shillman* and *Sy-Lene*.

While testimony of the promisee's intent is admissible to corroborate the primary party in interest identified in the contract, it cannot be used to alter the terms of the agreement. When the language of an agreement is plain and unambiguous, it will not be changed to reflect the subjective intentions of the parties. *Sy-Lene*, *supra*, and *Faulkner v American Casualty Company of Reading, Pa.*, 85 Md. App. 595, 605-06 (1991). In this case there is no ambiguity contained in the August 22, 2012 email. It is enforceable according to its terms whether JMM or another masonry entity performed the work.

The undisputed facts in this case establish as a matter of law that PVB was the primary party in interest and privy to the promise made by Grahams in its email. As a creditor beneficiary, it was legally entitled to enforce Grahams' guarantee of payment.

In its motion for summary judgment, PVB also cited *Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670 (D. Md. 2010). In that case Jones sued an automobile dealership after she purchased a vehicle and traded in her prior car.

She alleged that Koons failed to pay off the lien that was held by Prestige on her prior car. Prestige moved to intervene in the lawsuit and asserted that it was a third-party beneficiary to the contract between Koons and Jones. The court in *Jones* decided that "The Buyers Order and the Retail Installment Sales Contract between Jones and Koons both provide for a payoff of the lien on the 2006 Ford Taurus. Jones' [the promisee's] amended complaint also alleges that the parties intended for Prestige to be paid off. Prestige has an interest in getting its promised $13,148 payout from Koons. In short, Prestige is a third-party beneficiary." (References to amended complaint omitted.) *Id.* at 689.

While the District Court found the facts in *Jones* to be distinguishable, they are quite similar. PVB was named in the contract, it had an economic interest in being paid and JMM's intent was to have PVB paid in full. While Grahams and JMM never made PVB aware of the existence of the August email, there was no indication in *Jones* when Prestige was notified that its loan was to be paid off.

The District Court's conclusion that PVB was not the primary party in interest was also based on the fact that it was unaware of the existence of the agreement until after the initial Miller Act claim was filed. (JA 326). However, knowledge of the agreement on the part of the beneficiary is not required for it to have a right of action. *Restatement (Second) of Contracts* § 306, Comment a. See also *Ohio Casualty Ins. Co. v. Beckwith*, 74 F.2d 75 (5th Cir. 1934); *W. Chelsea*

20

*Bldgs., LLC v United States*, 109 Fed. Cl. 5, 23 (2013), 2013 WL 572559 (referring to the nearly universal rule that a third-party beneficiary may enforce a promise even if he is a stranger to the contract and to the consideration); *In re Estate of Fanning*, 333 N.E. 2d 80, 83-84 (Ind. 1975); and *Lincoln Nat. Life Ins. Co. v Means*, 95 S.W. 2d 264 (Ky. 1936).

Lastly, the District Court makes the statement that the presence of PVB's name in the agreement "appears incidental". (JA 326). Any objective reading of the email dispels this erroneous conclusion. It is an unequivocal guarantee of payment by Grahams to PVB.

Under these circumstances the District Court should have entered summary judgment in favor of PVB against Grahams in the sum of $90,657.36. (UMF ¶ 9.) Since delivery of the material to the project was not a condition of this guarantee, Grahams' promise extends to the entire order placed by JMM with PVB, including the undelivered material that PVB is currently holding. Further, since the obligation to pay interest and attorneys' fees to PVB are part of the terms of the order, they are also Grahams' responsibility. Interest at the rate established in the credit agreement is 1 ½% per month. It totals $17,481.15 through December 30, 2013 (UMF ¶ 38) and thereafter at the rate of 1 ½% per month until paid.

PVB also has a claim in Count Two against Grahams for attorneys' fees of 33% of the unpaid account balance including interest based on JMM's credit

21

application. The parties however had agreed that this issue would be handled as a post-judgment matter pursuant to Local Rule 109.2 of the U.S. District Court for the District of Maryland.

## III.   GRAHAMS' PROMISE TO PAY PVB WAS SUPPORTED BY CONSIDERATION

A third-party beneficiary takes the contract subject to the same defenses that the promisor could raise against the promisee. *Dickerson v. Longoria*, 414 Md. 419, 452 (2010). In this case Grahams argued that the email "… does not reflect a new exchange of promises or consideration, as JMM was already under contract to furnish and install masonry material, and Grahams already was obligated to pay JMM for the work performed under the subcontract." (JA 321).

With respect to the issue of consideration, in mid-August, 2012, Grigsby wanted JMM released from its contract with Grahams due to the serious injury sustained by his project superintendent and JMM's questionable ability to provide sufficient masons for Grahams, which was already approximately three months behind schedule. SOF ¶ 16 (JA 135 and JA 176) and UMF ¶ 8. JMM told Grahams to order the brick from PVB itself and hire another masonry subcontractor to complete the project. UMF ¶ 10. In order to induce JMM to remain on the job without its project superintendent, even though accelerated work was required, as well as to obtain the needed masonry material, Heath sent the

22

August 22, 2012 email guaranteeing payment of PVB's bill. The email was

accepted by JMM, which placed the brick order with PVB and did not walk off the

job. Grahams clearly benefitted from this agreement in that it avoided further

project delays that would have resulted both in locating a new masonry

subcontractor and in opening an account with PVB so that it could purchase the

masonry material.

Sufficient consideration exists to support Grahams' promise to guaranty

payment of the PVB debt. In *Linz v. Schuck*, 106 Md. 220, 229-30 (1907), the

Court quoted from a Minnesota decision and stated as follows:

> "… where the party refusing to complete his contract does so by
> reason of some unforeseen and substantial difficulties in the
> performance of the contract, which were not known or anticipated by
> the parties when the contract was entered into, and which cast upon
> him an additional burden not contemplated by the parties, and the
> opposite party promises him extra pay or benefits if he will complete
> his contract, and he so promises, the promise to pay is supported by a
> valid consideration. In such a case the natural inference arising from
> the transaction, if unmodified by any equitable considerations, is
> rebutted, and the presumption arises that by the voluntary and mutual
> promises of the parties their respective rights and obligations under
> the original contract are waived, and those of the new or modified
> contract substituted for them. Cases of this character form an
> exception to the general rule,"

> $*$  $*$  $*$

> We have thus referred to, and quoted from, that case at unusual
> length, because the principles therein announced seem to us to be, not
> only well and clearly stated, but just, and founded on reasons that any
> court of justice should hesitate to reject, unless they conflict with
> some binding authority or established rule of law, which, in our
> judgment they do not.

In this case, the unforeseen difficulties consisted of the need for accelerated work, promptly obtaining delivery of the masonry material from PVB and the absence of JMM's project superintendent. As a result of its August 22, 2012 email, Grahams secured the benefit of JMM remaining on the job (and ordering the masonry material from PVB) without further disruption to the project that was already behind schedule. This benefit makes its guaranty to JMM of PVB's account binding on Grahams. In return, JMM received Grahams' unconditional promise to pay PVB for the masonry material that JMM ordered for this project.

The District Court in its analysis assumed that the August 22, 2012 email was a contract (JA 324). Based upon *Linz* the District Court was legally correct in this assumption.

## IV.  ENTRY OF JUDGMENT AGAINST GRAHAMS SHOULD BE PURSUANT TO Fed .R. Civ. P. 54(b)

PBV also requested that entry of summary judgment on Count Two of its Amended Complaint be certified as final pursuant to Fed. R. Civ. P. 54(b) so that it could begin enforcement against Grahams while the Court considered the issue of attorneys' fees. Such certification requires the Court to make an express determination that there is no just reason for delay. While Rule 54(b) certification is the exception rather than the norm, there exists sufficient basis in this case for

such action. *Braswell Shipyards, Inc. v Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993). In its analysis of this issue, the Court must

> (1) Determine whether the judgment is "final" … in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action[,]"
> [and] …
>
> (2) Determine whether there is no just reason for the delay in the entry of judgment.

*Id.* at 1335.

The factors to be considered with respect to the second determination involve

> "(1)  the relationship between the adjudicated and unadjudicated claims;
> (2)  the possibility that the need for review might or might not be mooted by future developments in the district court;
> (3)  the possibility that the reviewing court might be obliged to consider the same issue a second time;
> (4)  the presence or absence of a claim or counterclaim which could resulting a set-off against the judgment sought to be made final;
> (5)  miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like."

*Id.*, quoting *Allis-Chalmers Corp. v Philadelphia Electric Co.*<br>521 F.2d 360, 364 (3rd Cir. 1975)

With respect to the first issue, the grant of summary judgment as to Count Two would necessarily be a final judgment on the amount of the indebtedness and the prejudgment interest. The attorney fee portion of Count Two would then be resolved as a post-judgment matter under Local Rule 109.2. These are unrelated claims.

Regarding the second and third factors, since Count One has been denied, there is no possibility of further review by this Court.

On the fourth factor, Grahams has not filed any counterclaim against PVB so that there is no likelihood of the judgment amount being reduced.

Lastly, PVB has supplied substantial material to a project in the fall of 2012 and the spring of 2013 for which it has not been paid. Grahams received payment for this material from the Government and has failed to disburse these funds to JMM and/or PVB. UMF ¶ 30. Such retention by Grahams was directly contrary to the following sworn certification that appears on its payment applications to the Government:

> I hereby certify, to the best of my knowledge and belief, that the amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract; payments to subcontractors and suppliers have been made from any previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with the subcontract agreements and the requirements of the prompt payment act, Chapter 39, Title 31, United States Code; and this request for payment does not include any amounts which the Prime Contractor intends withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

See Ex. 1, p. 61 – 64 (JA 42-JA 45) and Ex. 9 (JA 91-JA 96) to the UMF.

PVB should be allowed to pursue immediate collection of any judgment entered as to Count Two against Grahams. PVB had to purchase the masonry material in this case from the manufacturer and has paid for it. There is no

equitable reason to delay PVB from seeking to recover this expenditure from Grahams, which has improperly procured and retained these funds, until the entire case is concluded.

## CONCLUSION

For the reasons set forth in this brief, this Court should reverse the judgment of the District Court dismissing Count Two of PVB's amended Complaint. This Court should further remand the case to the District Court for entry of a Rule 54(b) judgment in favor of PVB against Grahams on Count Two in the sum of $90,657.36, with interest through December 30, 2013 of $17,481.15 and thereafter at the rate of 1 ½% per month. Lastly, this Court should direct the District Court to consider PVB's claim for attorneys' fees pursuant to its Local Rule 109.2.

_____/s/_____ *Frank J. Emig*
FRANK J. EMIG, #309393
Law Offices of Frank J. Emig
8337 Cherry Lane
Laurel, MD 20707-4828
T: 301-345-7002; F: 301-362-2266
Email: frankemig@msn.com
Attorney for Appellant,
Potomac Valley Brick and Supply
Company

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains <u>6,764</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

/s/Frank J. Emig       
Frank J. Emig

*Counsel for Appellant*

Dated: July 7, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 7, 2014, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF System, which will send notice of such filing

to the following registered CM/ECF users:

> Christopher M. Anzidei, Esq.
> Law Offices of Christopher Anzidei
> 8381 Old Courthouse Road, Ste. 160
> Vienna, VA  22183
> (703) 388-0087
> ChrisAnzidei@anzideilaw.com
>
> *Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

> /s/  Shelly N. Gannon
> Shelly N. Gannon
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street
> Suite 230
> Richmond, VA  23219