RECORD NO. 14-1492

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA FOR THE USE AND BENEFIT
OF POTOMAC VALLEY BRICK AND SUPPLY COMPANY,

*Plaintiff - Appellant,*

v.

GRAHAMS CONSTRUCTION, INCORPORATED;
THE GUARANTEE COMPANY OF NORTH AMERICA USA,

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

### RESPONSE BRIEF OF APPELLEES

Christopher M. Anzidei
LAW OFFICES OF CHRISTOPHER M. ANZIDEI, PLLC
Suite 160
8381 Old Courthouse Road
Vienna, VA 22182
(703) 388-0614
ChrisAnzidei@AnzideiLaw.com

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1492          Caption: USA f/u/b Potomac Valley Brick Supply Co. v. Grahams Construction

Pursuant to FRAP 26.1 and Local Rule 26.1,

Grahams Construction, Inc.
(name of party/amicus)

_____

who is            Appellee           , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                      ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: __5/28/14__

Counsel for: Grahams Construction, Inc._____

## CERTIFICATE OF SERVICE
****************************

I certify that on _May 29, 2014_ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Frank J. Emig, Esquire
Law Offices of Frank J. Emig
8337 Cherry Lane
Laurel, MD 20707
frankemig@msn.com
Counsel for Appellant

_____        _May 29, 2014_
(signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1492          Caption: USA f/u/b Potomac Valley Brick Supply Co. v. Grahams Construction

Pursuant to FRAP 26.1 and Local Rule 26.1,

The Guarantee Company of North America USA
(name of party/amicus)

who is          Appellee          , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☑YES ☐NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      The Guarantee Company of North America (US) Holdings, Ltd.
      The Guarantee Company of North America

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: __5/28/14__

Counsel for: Guarantee Company of North America

## CERTIFICATE OF SERVICE
****************************

I certify that on May 29, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Frank J. Emig, Esquire
Law Offices of Frank J. Emig
8337 Cherry Lane
Laurel, MD 20707
frankemig@msn.com
Counsel for Appellant

_____          May 29, 2014
(signature)                       (date)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iii

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUE .............................................................. 1

STATEMENT OF THE CASE .............................................................. 1

SUMMARY OF THE ARGUMENT ..................................................... 10

STANDARD OF REVIEW ................................................................. 13

ARGUMENT ..................................................................................... 14

I.     THE DISTRICT COURT CORRECTLY APPLIED MARYLAND LAW AND PROPERLY CONCLUDED THAT PVB WAS NOT THE INTENDED THIRD-PARTY BENEFICIARY OF GRAHAMS' AUGUST 22, 2012 EMAIL TO JMM ....................................... 15

II.    PVB HAS NOT DEMONSTRATED THAT THE DISTRICT COURT ERRED IN CONCLUDING THAT PVB WAS NOT AN INTENDED THIRD-PARTY BENEFICIARY OF THE AUGUST 22, 2012 EMAIL. .......................................................................... 18

    A.    The District Court Did Not Err by Interpreting the August 22, 2012 Email in Light of the Surrounding Circumstances in Concluding that PVB Was Not an Intended Third-Party Beneficiary of the Email. .................................................. 19

        1.    PVB's "plain language" argument is incorrect ................... 19

        2.    PVB's own interpretation of the August 22, 2012 email is not faithful to the plain language and seeks to imply a non-existent promise to pay PVB. ......................................... 20

    B.    PVB's Contention that the District Court Should Have Considered Only JMM's Intent Is Without Merit ......................... 22

    C.    The District Court Did Not Err in Holding that the August 22, 2012 Email Protected JMM's Financial Interests and Was Not Primarily Intended for PVB's Benefit ............................... 24

i

**D.** **PVB's Remaining Objections to the District Court's Ruling Are Without Merit.** ....................................................................27

**III.** **THE DISTRICT COURT'S DISMISSAL OF PVB'S THIRD-PARTY BENEFICIARY CLAIM SHOULD BE AFFIRMED FOR OTHER REASONS PRESENTED IN GRAHAMS' CROSS-MOTION FOR SUMMARY JUDGMENT ON COUNT II.** ............................30

**A.** **The August 22, 2012 Email Is Not a New Contract between Grahams and JMM.** ....................................................31

**B.** **PVB's Third-Party Beneficiary Claim Is an Improper Attempt to Circumvent the Miller Act and Privity of Contract.** .................35

**IV.** **PVB IS NOT, UNDER ANY CIRCUMSTANCES, ENTITLED TO SUMMARY JUDGMENT AND ENTRY OF FINAL JUDGMENT UNDER RULE 54(b).** ....................................................................40

**CONCLUSION** ....................................................................40

**CERTIFICATE OF COMPLIANCE** ....................................42

**CERTIFICATE OF FILING AND SERVICE** ......................43

# TABLE OF AUTHORITIES

**Cases**

120 W. Fayette St., LLP v. Mayor of Balt.,
    43 A.3d 355, 368 (Md. 2012) ........................................................15

All State Fin. Corp. v. Financorp.,
    934 F.2d 55, 58-59 (4th Cir. 1991)................................................26

Continental Oil Co. v. Horsey,
    3 A.2d 476, 478 (Md. 1939) ..........................................................30

CR-RSC Tower I, LLC v. RSC Tower I, LLC,
    56 A.3d 170, 212 (Md. 2012) ............................................... *passim*

Dickerson v. Longoria,
    995 A.2d 721, 741 (Md. 2010) ............................................... 15, 39

Feldman v. Law Enforcement Assocs. Corp.,
    752 F.3d 339, 348 (4th Cir. 2014) .................................................13

Ferguson v. Cramer,
    709 A.2d 1279, 1283 (Md. 1998) ........................................... 17, 19

General Motors Acceptance Corp. v. Daniels,
    492 A.2d 1306, 1309-10 (Md. 1983)..............................................29

Hamilton & Spiegel, Inc. v. Board of Ed. Of Mont. Cnty,
    195 A.2d 710, 711 (Md. 1963) ............................................... 20, 22

In re Estate of Fanning,
    333 N.E.2d 80 (Ind. 1975) ..................................................... 28-29

John McShain, Inc. v. Eagle Indem. Co.,
    23 A.2d 669, 670 (Md. 1942) ........................................................30

Jones v. Koons Automotive, Inc.,
    752 F. Supp.2d 670 (D. Md. 2010)........................... 12, 15, 27, 28

Kelly Springfield Tire v. Dowis,
    1994 U.S. App. Lexis 19662 (4th Cir. 1994) ...............................26

King v. Duluth, M. & N. R. Co.,
    61 Minn. 482 (1895) ........................................................................ 33, 34, 35

Lincoln Nat. Life Ins. Co. v. Means,
    95 S.W.2d 264 (Ky. 1936)............................................................................29

Linz v. Schuck,
    106 Md. 220 (1907) ........................................................................ 33, 34, 35

Lovell Land, Inc. v. State Highway Admin.,
    969 A.2d 284, 298 (Md. 2009) ....................................................................17

Mackubin v. Curtiss-Wright Corp.,
    57 A.2d 318, 321 (Md. 1948) ..................................................... 14, 15, 16, 21

Murphy v. Comptroller of the Treasury,
    207 F. Supp.2d 400, 404-05 (D. Md. 2002) .................................................14

National Labor College, Inc. v. Hillier Group Architecture N.J., Inc.,
    739 F. Supp.2d 821, 836 (D. Md. 2010)................................................ 16, 38

Noland Co. v. Armco, Inc.
    445 A.2d 1079, 1081 (Md. Ct. Spec. App. 1982) ..................... 36, 37, 38, 39

Ohio Casualty Ins. Co. v. Beckwith,
    74 F.2d 75 (5th Cir. 1934) ..........................................................................28

Roberts v. Woven Wire Mattress Co.,
    46 Md. 374, 386-87 (1877)..........................................................................30

Shillman v. Hobstetter,
    241 A.2d 570 (Md. 1968) ......................................................... 12, 20, 22, 23

Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, LLC,
    829 A.2d 540, 546 (Md. 2003) ....................................................................19

United States ex rel. Davison v. York Elec. Constr. Co.,
    184 F. Supp. 520 (D.N.D. 1960) .................................................................36

United States ex rel. Fordham v. P.W. Parker, Inc.,
    504 F. Supp. 1066 (D. Md. 1980)....................................................36

United States ex rel. Henry Walke Co. v. Van de Riet,
    316 F.2d 912 (4th Cir. 1963) .......................................................36

United States ex rel. State Elec. Supply Co., Inc. v. Hesselden Constr. Co.,
    404 F.2d 774 (10th Cir. 1968) .....................................................36

United Virginia Bank/Seaboard Nat'l v. B. F. Saul Real Estate Inv. Trust,
    641 F.2d 185, 189-90 (4th Cir. 1981).............................................29

Volcjak v. Washington Cnty. Hosp. Ass'n,
    723 A.2d 463, 477-78 (Md. Ct. Spec. App. 1999) .........................................15

Weems v. Nanticoke Homes, Inc.,
    378 A.2d 190, 196-97 (Md. Ct. Spec. App. 1977) ................................. 14, 16

West Chelsea Bldgs. v. United States,
    109 Fed. Cl. 5, 23 (2013)...........................................................28

Yaffe v. Scarlett Place Residential Condo.,
    45 A.3d 844, 851 (Md. Ct. Spec. App. 2012).................................. 19, 20, 22

**Rules**

Fed. R. Civ. P. 54(b) ................................................................40

Fed. R. Civ. P. 56(c)................................................................25

Fed. R. Civ. P. 56(e)............................................................ 25, 26

**Statutes**

40 U.S.C. § 3133(b)(2) ......................................... 2, 8, 35, 39

**Other Authorities**

Restatement (Second) of Contracts § 302(1).................................. 16, 38

## JURISDICTIONAL STATEMENT

Grahams does not dispute this Court's jurisdiction over PVB's appeal.

## STATEMENT OF THE ISSUE

Did the District Court properly enter summary judgment in favor of Grahams Construction, Inc. ("Grahams") on Count II of the Amended Complaint filed by Potomac Valley Brick and Supply Company ("PVB"), which asserts a third-party beneficiary claim based upon a purported payment guarantee, where PVB did not request or receive any payment guarantee from Grahams but rather bases its claim solely upon an email sent from Grahams to a subcontractor, which was neither requested by nor provided to PVB, includes no express promise to pay PVB, confers no rights upon PVB, imposes no duties on Grahams with respect to PVB, and where the surrounding circumstances indicate that Grahams and its subcontractor were merely addressing arrangements that served their own interests?

## STATEMENT OF THE CASE

### A.    PVB's Miller Act Lawsuit

This dispute arises from a federal construction contract that Grahams performed for the United States Army and Air Force Exchange Service ("AAFES"), Contract No. 7300058246, to construct a Shoppette gas station and convenience store at Andrews Air Force Base ("Project"). (JA 131 at¶ 1). Grahams

1

was the general contractor, JMM was a subcontractor to Grahams, and PVB was a lower-tier material supplier under JMM.  In other words, PVB was only in privity of contract with JMM, and not Grahams.

JMM evidently did not pay for all of the materials that it ordered from PVB, and this case began as a one-count Miller Act claim brought by PVB against Grahams and its surety, The Guarantee Company of North America, USA ("GCNA"), seeking recovery under the payment bond for JMM's alleged unpaid invoices.  After Grahams and GCNA asserted a defense based upon PVB's failure to comply with the Miller Act (upon which the defendants ultimately prevailed), PVB amended its Complaint to re-cast its claim under a purported third-party beneficiary theory asserted in Count II of the Amended Complaint. (JA 8-10). PVB alleged that it was the intended beneficiary of a purported "contract" between Grahams and JMM, which was, in actuality, merely an email, dated August 22, 2012, that Grahams exchanged only with JMM.

### B.    Procedural History

After completing discovery, the parties filed cross-motions for summary judgment on Counts I and II.  The District Court granted summary judgment to Grahams and GCNA on Count I based upon PVB's failure to comply with the Miller Act's notice requirements applicable to lower-tier subcontractors, 40 U.S.C. § 3133(b)(2), and the District Court granted summary judgment to Grahams on

Count II because PVB failed to establish any right to sue Grahams as a purported third-party beneficiary of the August 22, 2012 email. PVB did not appeal the District Court's dismissal of its expired Miller Act claim asserted in Count I.[1] Thus, this appeal involves one single issue: whether the District Court properly dismissed PVB's third-party beneficiary claim asserted in Count II.

## C. The Undisputed Factual Record Pertaining to PVB's Third-Party Beneficiary Claim.

The factual record pertaining to PVB's third-party beneficiary claim is undisputed, and the District Court properly interpreted Maryland law in granting summary judgment to Grahams on Count II of PVB's Amended Complaint. In sum, PVB did not—and cannot—establish that it was the intended third-party beneficiary of any contract between Grahams and its actual subcontractor, JMM. PVB's third-party beneficiary claim is not based upon the terms of the actual written Subcontract between Grahams and JMM, but rather a subsequent email exchanged only between Grahams and JMM on August 22, 2012. This email does not clearly and expressly confer any rights upon PVB as a third-party beneficiary, as required by Maryland law for PVB to sue Grahams directly.

---

[1] PVB's appeal papers identify Defendant GCNA as an additional Appellee. PVB, however, has not appealed Count I, which is the only claim asserted against GCNA. Accordingly, the only proper Appellee is Defendant Grahams.

### 1. JMM's Subcontract with Grahams.

As of August 22, 2012, JMM was already under contract with Grahams, and JMM had begun performing its work on the Project. (JA 132 at ¶¶ 5-6). The parties had entered into a written Subcontract, dated February 10, 2012, which JMM executed and returned to Grahams on or about March 14, 2012. (JA 132 at ¶¶ 4-5). JMM's specific scope of work under its Subcontract included, among other things, the supply and installation of materials to build, reinforce, and grout the masonry walls for the Shoppette building, according to plans and specifications issued by AAFES. (JA 132 at ¶¶ 4, 7).

One aspect of the work that JMM accomplished between March and July 2012 included submitting brick samples and constructing mock-ups of a masonry wall for approval by AAFES's Project Architect. (JA 132 at ¶ 6; JA 303). JMM utilized brick samples that it had obtained from PVB in completing these tasks. Id. On or about July 30, 2012, Grahams received the Project Architect's approval of JMM's masonry submittals and directed JMM to order the materials, as required by its Subcontract. (JA 132 at ¶ 7; JA 303).

### 2. JMM's August 21, 2012 Materials Order with PVB.

On August 21, 2012, JMM ordered the brick and masonry materials from PVB. (JA 133 at ¶ 8). PVB issued a written Order Acknowledgement to JMM on that same date, August 21, 2012. (JA 134 at ¶ 12; JA 303). JMM signed and

returned the Order Acknowledgement to PVB on August 22, 2012. (JA 134 at ¶ 14; JA 303).

Prior to accepting JMM's order, PVB first had to approve JMM to purchase materials for the Project on credit. (JA 133 at ¶ 9). As a condition of extending credit, PVB required JMM to complete and return a Business Credit Application Agreement. (JA 133 at ¶ 10; JA 233-234). On July 31, 2012, Michael D. Grigsby, Jr. executed the Business Credit Application Agreement on behalf of JMM, and both Michael D. Grigsby, Sr. and Joyce M. Grigsby also executed the Agreement as personal guarantors of JMM. Id. The Agreement provides:

> In consideration of your extension of credit to the above named Applicant and in further consideration of the delivery of certain materials to said Applicant, we, the undersigned, do hereby jointly and individually guarantee to Potomac Valley Brick & Supply Co. the payment of all funds due by said Applicant and further agree that all or any of the undersigned may be held jointly and/or severally liable to Potomac Valley Brick & Supply Co. for said indebtedness.

> Id.

PVB approved JMM's credit prior to accepting JMM's order on August 21, 2012. (JA 133 at ¶ 9). PVB did not request or require any guarantees from any other individuals or entities before it extended credit to JMM. (JA 134 at ¶ 11). Specifically, PVB accepted JMM's order without making any inquiries to Grahams, and PVB did not request any guarantee of payment from Grahams as a

5

condition of the order. Id. Simply put, PVB did not request any payment guarantee whatsoever from Grahams prior to accepting JMM's order.

### 3.    Grahams' August 22, 2012 Email to JMM.

In mid-August 2012, JMM requested that Grahams consider releasing JMM from the Subcontract. (JA 135 at ¶ 16). JMM made this request after its project manager had seriously injured himself in an accident and was hospitalized. (JA 104-106; JA 135 at ¶ 16).

On August 22, 2012, while JMM's request to be released from its Subcontract was still pending, Mr. Grigsby, Sr. contacted Grahams to discuss JMM's brick order. (JA 135 at ¶ 17). Mr. Grigsby, Sr. testified that he wanted to make sure that Grahams would still pay for brick materials that JMM ordered from PVB in the event that Grahams released JMM from its Subcontract and employed another mason to erect the masonry walls. Id.

Following their discussion, Mr. Heath responded to Mr. Grigsby with an email, dated August 22, 2012. (JA 135 at 17 (quoting JA 234)). The August 22nd email states as follows:

> Mike: Per our conversation this morning, Grahams Construction, Inc. will guarantee payment of the block and materials for this project that you have are [sic.] going to purchase from Potomac Valley Brick for the Shoppette Project at Andrews AFB, MD. This guarantee will be whether M&M Masonry performs the work associated with the masonry or due to schedule restraints we have to employ other masons.
>
> Id.

6

PVB did not request any payment guarantees from Grahams, and PVB was not privy to the August 22, 2012 discussions between Grahams and JMM. (JA 134 at ¶ 11; JA 135 at ¶ 18). PVB did not receive a copy of the August 22, 2012 email during the Project, and PVB was not even aware of its existence until it received the email through discovery in this action. (JA 135 at ¶ 18).

As of August 22, 2012, JMM was already obligated to furnish and install the masonry materials under its Subcontract, and Grahams was already obligated to pay JMM for its labor and materials furnished, under the terms of the Subcontract. (JA 132 at ¶ 4 (citing JA 97-106)). Therefore, both Mr. Heath and Mr. Grigsby testified that the purpose of their August 22nd discussion, and Mr. Heath's follow-up email, was to address payment arrangements for the materials in the event that Grahams agreed to release JMM and hire another mason to erect the masonry walls. (JA 135 at ¶ 17). Ultimately, these discussions became a moot point because JMM was not released from its Subcontract, and JMM ultimately performed the masonry installation work. (JA 136 at ¶ 19).

In its appellate brief, PVB repeatedly asserts that Grahams provided the August 22nd email purportedly "to induce" JMM to continue performing its Subcontract and not "walk off" the Project. (PVB's Brief at ¶¶ 5, 11, 22-23). There is no support in the factual record for PVB's assertion. It is mere conjecture. Further, JMM would have been in breach of its Subcontract and subject to default

7

and termination under Paragraph 4 of the Subcontract if it had failed to perform its Subcontract obligations, which included both furnishing and installing the masonry materials. (JA 99-100).

### 4. PVB's Claim for Non-Payment by JMM.

Between September 5, 2012, and October 25, 2012, PVB made twelve (12) deliveries of brick and mortar to the Project site and invoiced JMM for the materials delivered. (JA 136 at ¶ 20). On April 8, 2013, PVB sent its Miller Act notice to Grahams and GCNA (JA 146 at ¶ 74) and subsequently filed this action in the District Court. PVB's claim was based upon JMM's non-payment.[2] Grahams disputed both entitlement and the amount of damages asserted by PVB. (JA 155 at ¶ 32; JA 156 at ¶ 37) After discovery, the parties filed cross-motions for summary judgment.

### D. The District Court's Rulings on Summary Judgment.

In ruling upon the parties' cross-motions for summary judgment, the District Court rejected PVB's Miller Act claim as untimely and dismissed Count I for PVB's failure to comply with the Miller Act's 90-day notice requirement, 40 U.S.C. § 3133(b)(2). (JA 320). The District Court also dismissed PVB's third-party beneficiary claim asserted in Count II, concluding that even "[a]ssuming the

---

[2] Grahams was required to withhold substantial amounts from JMM (under the terms of the Subcontract) to reimburse Grahams for its costs incurred in correcting JMM's defective masonry installation. (JA 154 at ¶ 30; JA 181-186). JMM acknowledged receiving notice of these backcharges from Grahams. Id.

8

August 22, 2012 email is a contract, Plaintiff's third-party beneficiary claim fails because Plaintiff is not an intended third-party creditor beneficiary." (JA 324).

First, the District Court construed the terms of the August 22, 2012 email and concluded that it was not expressly intended for PVB's benefit. (JA 324). As the District Court correctly observed, it was evident that the email merely addressed ordering materials so that they would be available if JMM did not perform the work. (JA 324-25). The email "contains no promise that Grahams would pay Plaintiff [PVB] directly or even a promise that Plaintiff would ever get paid." (JA 325).

Second, the District Court correctly concluded, based upon the undisputed record, that the plain purpose of the August 22, 2012 email was to protect JMM's own financial interest. (JA 302-304, 324-25). Specifically, JMM had requested to be released from its Subcontract, and JMM wanted assurance that Grahams would pay for the materials even if another mason installed them. (JA 304). Thus, the District Court properly concluded that the August 22, 2012 email was prompted by JMM's desire to protect its own financial interest in the event it were released. (JA 324-325).

Third, the District Court examined the context surrounding the August 22, 2012 email, which confirms that PVB was not the primary party in interest. The District Court correctly observed that the single mention of PVB's name in the

email was incidental, i.e., to identify the source of materials approved by the Project Architect. (JA 326). The District Court noted that "Grahams and JMM never made [PVB] aware of the [email] contract's existence; [PVB] discovered it only as a result of the discovery process." (JA 326). The District Court also found that Grahams and JMM did not make PVB privy to the email and that PVB did not acquire any rights from the email, which underscores that PVB was not an intended third-party beneficiary. (JA 326-327). The District Court concluded that the email "does not manifest the requisite intent to make PVB a third-party creditor beneficiary." (JA 327). Rather, the District Court determined that PVB was, at most, an incidental beneficiary to the email arrangements discussed between Grahams and JMM. Id.

The District Court's holding was correct, and its entry of summary judgment on Count II should be affirmed.

## **SUMMARY OF THE ARGUMENT**

The District Court was correct in granting Grahams' cross-motion for summary judgment on Count II, and denying PVB's cross-motion. PVB cannot, as a matter of law, establish a valid third-party beneficiary claim arising from an email sent from Grahams to JMM, its subcontractor, on August 22, 2012.

First, as the District Court properly concluded, PVB did not —and cannot— establish that it was the primary party in interest and intended beneficiary of

Grahams' August 22, 2012 email. Maryland law requires a party claiming to be a third-party beneficiary to prove that it was clearly intended to be the real promisee, i.e., that the parties clearly intended to recognize the third party as the primary party in interest and as privy to the promise. PVB did not—and cannot—carry this burden. It is undisputed that, while PVB obtained personal and corporate guarantees from JMM, PVB did not request any guarantee from Grahams. Nor was PVB even aware of the existence or content of the August 22nd email until discovery. Further, the email does not expressly confer any rights upon PVB, and the undisputed record indicates that Grahams and JMM were merely addressing arrangements for payment of materials in the event that JMM were granted a release of its obligation to erect the masonry walls (this contingency never occurred). Thus, at most, JMM was seeking to protect its own financial interest.

Second, PVB's brief fails to identify any errors of law in the District Court's opinion. PVB incorrectly argues that the District Court should have confined its analysis to interpreting the plain language of the August 22, 2012 email. On the contrary, however, Maryland law allows the court to consider the "surrounding circumstances" in determining whether the parties intended to confer rights upon a third-party beneficiary. Further, PVB's argument is not even faithful to the plain language of the August 22nd email because PVB erroneously implies a non-existent promise to pay PVB directly—which appears nowhere in the email.

Third, PVB suggests that the District Court erred because it should only have considered the intent of the promisee (JMM) in relation to the August 22nd email. This argument—which undercuts PVB's "plain language" argument—is based upon PVB's misreading of Shillman v. Hobstetter, 241 A.2d 570 (Md. 1968). Nor does PVB's argument gain any support from the testimony of JMM because this testimony—and the entire undisputed record presented to the District Court—demonstrates that JMM was seeking to protect its own financial interest.

Fourth, the remaining arguments in PVB's brief are without merit. PVB misconstrues the import of Jones v. Koons Automotive, Inc., 752 F. Supp.2d 670 (D. Md. 2010), an inapposite case involving one party's express promise to satisfy another party's pre-existing financial obligation to a third party. Here, in contrast, Grahams did not make any express promise to pay PVB directly. Similarly, the cases cited by PVB for the proposition that a third-party beneficiary need not have knowledge of the contract are inapposite because each of those cases also involved a contract that expressly conferred rights upon the third-party beneficiary. In addition, PVB cannot recover on a guaranty theory because a guaranty is a three-party contract in which the guarantor enters into an express contract with the creditor (obligee). That is plainly not the circumstance presented here.

The District Court's dismissal of PVB's third-party beneficiary claim should also be affirmed for several reasons that were not expressly addressed in the

opinion below.  The District Court's analysis assumed that the August 22, 2012 email was a new contract between Grahams and JMM.  There is, however, no evidence to support PVB's assertion that this email was, in actuality, a new contract, and any such purported contract would fail for lack of consideration.  In addition, courts have repeatedly rejected attempts by lower-tier bond claimants to assert a third-party beneficiary claim where—as in this case—the claimant would circumvent both basic tenets of privity of contract and statutory claim requirements.  Finally, even if the August 22, 2012 email were construed as a new contract, it was conditioned upon JMM not performing the masonry installation work.  This condition never occurred.

Finally, PVB is not, under any circumstance, entitled to summary judgment on Count II or certification of a final judgment in its favor pursuant to Federal Rule of Civil Procedure 54(b).  Grahams properly disputed both of these arguments on factual grounds in responding to PVB's motion for summary judgment.

## STANDARD OF REVIEW

The District Court's grant of summary judgment is reviewed de novo.  E.g., Feldman v. Law Enforcement Assocs. Corp., 752 F.3d 339, 348 (4th Cir. 2014).  Summary judgment is properly entered against a party that has failed to establish one or more essential elements of a claim on which that party will bear the burden of proof at trial.  Id.  As the party claiming third-party beneficiary status, PVB had

the burden to establish all of the elements of a third-party beneficiary claim. E.g., Murphy v. Comptroller of the Treasury, 207 F. Supp.2d 400, 404-05 (D. Md. 2002); accord Mackubin v. Curtiss-Wright Corp., 57 A.2d 318, 321 (Md. 1948) ("before a stranger to a contract can avail himself of the exceptional privilege of suing for breach thereof, he must at least show that it was intended for his direct benefit"); see also Weems v. Nanticoke Homes, Inc., 378 A.2d 190, 196-97 (Md. Ct. Spec. App. 1977).

## **ARGUMENT**

PVB asserts several arguments on appeal, all of which are lacking in merit. PVB does not contend that the District Court relied upon any disputed facts. Rather, PVB challenges the District Court's conclusions of law. PVB's argument misconstrues Maryland third-party beneficiary law and fails to identify any errors of law in the District Court's ruling. All of PVB's arguments on appeal are grounded in its erroneous assumption that the August 22nd email was intended for PVB's benefit. PVB assumes, but never proves, this conclusion. At bottom, PVB's argument is nothing but a straw-man. PVB begins with the erroneous premise that Grahams' August 22, 2012 email was actually a new contract between Grahams and JMM that somehow induced JMM to remain on the Project, and PVB erroneously concludes—without any basis in the undisputed factual record—that this purported "contract" was made for PVB's own benefit.

14

## I. THE DISTRICT COURT CORRECTLY APPLIED MARYLAND LAW AND PROPERLY CONCLUDED THAT PVB WAS NOT THE INTENDED THIRD-PARTY BENEFICIARY OF GRAHAMS' AUGUST 22, 2012 EMAIL TO JMM.

The District Court applied the correct legal standard to the undisputed factual record and properly concluded that PVB could not establish a fundamental element of its claim—proving that it was the intended beneficiary of Grahams' August 22, 2012 email. (JA 322-327). As the District Court properly stated, Maryland law will not recognize a party as a third-party beneficiary to a contract unless the third party can prove that "the contract was intended for [its] benefit and it … *clearly appears* that the parties intended to recognize [it] as the *primary party in interest and as privy to the promise*." Jones v. Koons Auto., Inc., 725 F. Supp.2d 670, 689 (D. Md. 2010) (quoting Dickerson v. Longoria, 995 A.2d 721, 741 (Md. 2010) (emphasis added)); accord CR-RSC Tower I, LLC v. RSC Tower I, LLC, 56 A.3d 170, 212 (Md. 2012) (quoting 120 W. Fayette St., LLP v. Mayor of Balt., 43 A.3d 355, 368 (Md. 2012)); Mackubin v. Curtiss-Wright Corp., 57 A.2d 318, 321 (Md. 1948); Volcjak v. Washington Cnty. Hosp. Ass'n, 723 A.2d 463, 477-78 (Md. Ct. Spec. App. 1999)). "In order to recover it is essential that the beneficiary shall be *the real promisee*; i.e., that the promise shall be made to him in fact, though not in form. It is not enough that the contract may operate to his benefit. " Mackubin, 57 A.2d at 321 (emphasis added); accord Volcjak, 723 A.2d at 510.

Maryland law distinguishes between incidental and intended beneficiaries of a contract. CR-RSC Tower I, LLC, 56 A.3d at 212. In the construction industry, it is common for contractors to contract with subcontractors who, in turn, purchase materials from lower-tier suppliers, and these lower-tier suppliers are merely incidental beneficiaries of the payment arrangements between the general contractor and its subcontractor. See National Labor College, Inc. v. Hillier Group Architecture N.J., Inc., 739 F. Supp.2d 821, 836 (D. Md. 2010) ("contractor-subcontractor contracts like the one seen here traditionally create incidental third-party beneficiaries") (quoting Restatement (Second) of Contracts § 302(1), cmt. E, illus. 19 ("A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. … B is an incidental beneficiary of C's promise to pay A.")).

A third-party, however, acquires no rights merely by proving that a contract includes terms that may operate to its benefit or that it may derive some incidental benefit from the contract. CR-RSC Tower I, LLC, 56 A.3d at 212; accord Mackubin, 57 A.2d at 321. The party claiming third-party beneficiary status must show that the contract was clearly intended for its direct benefit. E.g., Mackubin, 57 A.2d at 321; Weems, 318 A.2d at 196-97. The "crucial fact" in separating intended and incidental beneficiaries is "whether the pertinent provisions in the contract were inserted to benefit the third party." CR-RSC Tower I, LLC, 56 A.3d

16

at 212; accord Lovell Land, Inc. v. State Highway Admin., 969 A.2d 284, 298 (Md. 2009) (rejecting third-party beneficiary claim where there is no evidence that pertinent provisions were inserted for third party's benefit).  As the District Court correctly observed, Maryland courts examine both the language of the instrument and "the surrounding circumstances as reflecting upon the parties' intention" in determining whether the parties intended to confer third-party beneficiary rights. CR-RSC Tower I, LLC, 56 A.3d at 213 (quoting Ferguson v. Cramer, 709 A.2d 1279, 1283 (Md. 1998))

The District Court properly applied these legal principles in concluding that PVB was not the intended third-party beneficiary of Grahams' August 22nd email. It is undisputed that the August 22nd email occurred in the context of ongoing discussions between Grahams and JMM regarding JMM's request to be released from its Subcontract obligation to install the masonry walls (a contingency that did not occur). (JA 135 at ¶¶ 16-17; JA 327).  Specifically, the email addresses payment arrangements for the materials ordered by JMM in the event that Grahams hired another mason to install the materials. (JA 135 at ¶ 17; JA 234).  In contrast, PVB did not request any guarantee from Grahams and was not even aware of the existence or content of the August 22nd email. (JA 134-136 at ¶¶ 11, 18).  PVB did not even receive a copy of the email until discovery in this action. (JA 135 at ¶ 18). As the District Court observed, the August 22nd email does not, by its plain terms,

make any promise to pay PVB directly—or at all. (JA 325). That is because, as the District Court correctly observed, the email was addressing the mutual interests of Grahams and JMM.[3] (JA 325). Indeed, PVB's Amended Complaint itself alleges that JMM relied upon the August 22nd email in ordering materials from PVB (JA 9 at ¶ 14); thus, even PVB alleges that JMM was acting to protect its own interests. In sum, as the District Court properly concluded, PVB was, at most, an incidental beneficiary of the August 22nd email. (JA 327).

## II. PVB HAS NOT DEMONSTRATED THAT THE DISTRICT COURT ERRED IN CONCLUDING THAT PVB WAS NOT AN INTENDED THIRD-PARTY BENEFICIARY OF THE AUGUST 22, 2012 EMAIL.

The District Court properly rejected PVB's third-party beneficiary claim, and PVB's attempts to characterize itself as a third-party beneficiary of Grahams' August 22, 2012 email are without merit. PVB's arguments misinterpret both the District Court's rulings and Maryland third-party beneficiary law.

---

[3] PVB's brief references certain U.C.C. requirements, apparently in an effort to show that the brick order was voidable (at PVB's option), if JMM had not signed and returned the written order acknowledgement on August 22, 2012. (PVB Brief at 12). At most, this shows only that JMM was seeking to protect its own financial interest in discussing the material order with Grahams on August 22. PVB could not possibly have relied on the email because it was not even aware of the August 22nd exchange between Grahams and JMM.

**A.     The District Court Did Not Err by Interpreting the August 22, 2012 Email in Light of the Surrounding Circumstances in Concluding that PVB Was Not an Intended Third-Party Beneficiary of the Email.**

On appeal, PVB first argues that the District Court should have confined its analysis to the terms of the August 22, 2012 email, without considering the undisputed factual record pertaining to the circumstances surrounding the email. This argument is legally incorrect and misinterprets the August 22nd email.

1.     PVB's "plain language" argument is incorrect.

In advancing its "plain language" argument, PVB merely recites the general rule of "objective contract interpretation" as quoted in Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, LLC, 829 A.2d 540, 546 (Md. 2003), without addressing the specific rule applicable to third-party beneficiary cases. As the District Court correctly observed, Maryland courts examine both the language of the instrument and "the surrounding circumstances as reflecting upon the parties' intention" in determining whether the parties intended to confer third-party beneficiary rights. CR-RSC Tower I, LLC, 56 A.3d at 213 (quoting Ferguson v. Cramer, 709 A.2d 1279, 1283 (Md. 1998)); accord Yaffe v. Scarlett Place Residential Condo., 45 A.3d 844, 851 (Md. Ct. Spec. App. 2012).

This is an exception to the general rule that extrinsic evidence is generally not considered in interpreting unambiguous contracts. CR-RSC Tower I, LLC, 56 A.3d at 213, n. 61. While the plain language of the purported contract may be the

19

starting place for any analysis, Shillman v. Hobstetter, 241 A.2d 570, 576 (Md. 1968), Maryland law certainly permits the court to consider the surrounding circumstances in determining whether the parties intended to confer any benefits upon third parties. E.g., CR-RSC Tower I, LLC, 56 A.3d at 213; Hamilton & Spiegel, Inc. v. Board of Ed. Of Mont. Cnty, 195 A.2d 710, 711 (Md. 1963); accord Yaffe, 45 A.3d at 851.

Indeed, PVB's own brief is internally inconsistent on this point. PVB relies heavily upon Shillman, 241 A.2d 570, which confirms that third-party beneficiary status must be determined by "the intention of the contract, revealed by its terms *in the light of the surrounding circumstances*." Id. at 575 (quoting Hamilton & Spiegel, Inc., 195 A.2d at 711) (emphasis added). Thus, it was proper for the District Court to consider the undisputed record of the circumstances surrounding the August 22, 2012 email in determining whether or not PVB was the primary party in interest and intended beneficiary of the purported contract.

> 2. PVB's own interpretation of the August 22, 2012 email is not faithful to the plain language and seeks to imply a non-existent promise to pay PVB.

In addition, PVB's argument is not even faithful to the plain language of the August 22, 2012 email. PVB erroneously contends—but does not and cannot prove—that the plain language of the August 22nd email confers rights upon PVB as a third-party beneficiary. The District Court correctly concluded that the August

22nd email does not, by its plain terms, grant any rights whatsoever to PVB. (JA 325). Rather, the email merely addresses arrangements between JMM and Grahams. (JA 234).[4] As the District Court correctly observed, the email "contains no promise that Grahams would pay Plaintiff directly or even a promise that Plaintiff would ever get paid." (JA 325). The plain language of the August 22nd email does not confer creditor beneficiary status upon PVB, as PVB erroneously suggests, because the email does not obligate Grahams to satisfy any duty that JMM owed to PVB. (JA 234). Specifically, the email does not state that Grahams will pay PVB for materials ordered by JMM. Quite the contrary, even PVB acknowledges that Grahams paid JMM directly and that JMM, in turn, issued payment to PVB during the course of the Project. (JA 31 at ¶¶ 30-31).

In sum, PVB's claim fails even under a plain reading of the August 22nd email because the plain language contains no express promise made for PVB's direct benefit. The email is not clearly intended to recognize PVB as the primary party in interest and as privy to the promise, as required by Maryland law. E.g., CR-RSC Tower I, LLC, 56 A.3d at 212; Mackubin, 57 A.2d at 321. Rather, PVB's own argument is entirely premised upon a non-existent promise that PVB implies into the email, i.e., that Grahams would pay PVB directly.

---

[4] As the District Court again correctly noted, the mere mention of PVB's name in the email (as the source of materials) is insufficient to confer third-party beneficiary rights. CR-RSC Tower I, LLC, 56 A.3d at 212.

**B.    PVB's Contention that the District Court Should Have Considered Only JMM's Intent Is Without Merit.**

PVB also erroneously argues that the District Court should only have considered the intent of the alleged promisee (JMM), and PVB asserts that the District Court erred by considering both Grahams' and JMM's testimony regarding the August 22nd email.  In advancing this argument, PVB recognizes—at least tacitly—that it was proper for the District Court to consider more than the plain language.

PVB's argument that only JMM's intent should have been considered is again based upon a misreading of Maryland law.  Specifically, PVB misinterprets Shillman v. Hobstetter, 241 A.2d 570 (Md. 1968).  Contrary to PVB's assertion, the Court of Appeals in Shillman did not enunciate any bright-line rule that only the promisee's intent should be considered.  Rather, the Shillman court merely found that, under the specific facts presented, it was not reversible error for the trial court to afford "substantial weight" to the uncontroverted testimony of the promisee.  Id., 241 A.2d at 576.  Further, the Shillman court relied upon the Court of Appeals' prior ruling in Hamilton & Spiegel, 195 A.2d 710, which similarly does not state a bright-line rule that only the promisee's intent can be considered.  Id. at 711.  Nor have subsequent Maryland decisions established any such bright-line rule.  E.g., CR-RSC Tower I, LLC, 56 A.3d at 213; Yaffe, 45 A.3d at 851.

Further, Shillman is distinguishable from the present case because the appellate court in Shillman was most persuaded by the plain language of the contract, which expressly granted legal rights to purchasers as third-party beneficiaries. Id., 241 A.2d at 576. Specifically, as a condition of obtaining FHA financing, the promisor/developer made a clear and unequivocal promise to the promisee/FHA that it would "refund deposits made by contract purchasers of homes" if it failed to complete construction of their houses and settle with the purchasers. Id. at 573. The Court of Appeals observed that this language expressly identified the purchasers as direct beneficiaries of the developer's promise and guaranteed them specific rights (i.e., a refund of their deposit). Id. at 576. The trial record demonstrated that "the primary and indeed the only purpose of the contract" was to confer rights upon the purchasers as donee beneficiaries. Id. Thus, the promisee's testimony in Shillman merely reinforced the plain language of the contract.

In contrast to the contract in Shillman, the District Court properly found that the August 22, 2012 email does not specifically identify PVB as the intended beneficiary of any promise to pay for materials. Rather, as the District Court correctly observed, the email merely reflects that Grahams wanted JMM to obtain the materials (as required by its Subcontract), whether or not JMM ultimately furnished the labor to install the materials. (JA 324-25). Unlike Shillman, the

23

email contains no promise that Grahams would pay PVB directly for these materials.

**C.    The District Court Did Not Err in Holding that the August 22, 2012 Email Protected JMM's Financial Interests and Was Not Primarily Intended for PVB's Benefit.**

Next, PVB erroneously argues that JMM's testimony purportedly corroborates PVB's position that it was an intended third-party beneficiary of the August 22, 2012 email.  The District Court considered the undisputed record and disagreed with PVB's characterization.  The District Court properly concluded, as a matter of law, that "the email protects JMM's financial interests; however, it does not protect Plaintiff's interests." (JA 325).  PVB's brief ignores the uncontroverted record presented to the District Court, upon which the Court based its ruling.

Contrary to PVB's assertion, the District Court did consider JMM's testimony.  Specifically, the undisputed record shows that both parties to the August 22, 2012 email (JMM's president, Mr. Michael Grigsby, Sr. and Grahams' project manager, Michael Heath) acknowledged that this email was prompted by JMM's request that Grahams release JMM from its Subcontract and hire another mason to install the materials. (JA 135 at ¶ 17).  Mr. Grigsby, Sr. testified that he wanted to make sure that Grahams would still pay for materials that JMM ordered from PVB in the event that Grahams released JMM from its Subcontract and employed another mason to erect the masonry walls.  Id.  Specifically, Mr. Grigsby

testified, "I wanted a personal guarantee that we would be paid for the materials *if I did not do the work*. And that's why this [Mr. Heath's August 22, 2012 email] was sent over." (JA 135 at ¶ 17; JA 174 at lines 10-13). (emphasis added). Thus, contrary to PVB's argument, the District Court considered JMM's testimony on summary judgment and properly concluded, based upon the undisputed record, that JMM was acting for its own benefit in discussing payment arrangements with Grahams.

To the extent that PVB now seeks to dispute the factual record presented on summary judgment, PVB has waived any such objection. At the trial court, PVB did not offer any factual basis to dispute the uncontroverted record pertaining to Count II, (JA 288-289 at ¶¶ 1-18) thereby conceding that these facts were undisputed for summary judgment purposes. See Fed. R. Civ. P. 56(c), (e). While PVB did argue that Grahams' understanding of the August 22nd email was "not material," this was based upon PVB's erroneous "plain language" argument. (JA 289 at ¶ 17).[5] PVB did not, however, offer any evidence to dispute either the testimony of Grahams or JMM cited in Paragraph 17 of Grahams' Statement of Undisputed Facts. Id.

_____

[5] PVB purported to dispute DSUF ¶ 17 on the grounds that "[Mr.] Heath's subjective understanding of the August 22, 2012 email is irrelevant and is not a material fact to be considered by the Court. The meaning of the August 22, 2012 email is to be determined solely from the language of this document which indicates that it applied if JMM did the work or if another masonry subcontractor was used." (JA 289 at ¶ 17).

In its appellate brief, PVB now asks the Court to consider one additional excerpt from Mr. Grigsby's testimony, which, according to PVB, corroborates its third-party beneficiary theory. (PVB Brief at 18 (citing JA 180)). PVB should be precluded from asserting this argument on appeal since it failed to offer any factual basis to contravene either Mr. Heath's or Mr. Grigsby's testimony at the trial court, as required by Rule 56(e). E.g., Kelly Springfield Tire v. Dowis, 1994 U.S. App. Lexis 19662 at *3 (4th Cir. 1994) (holding that party that failed to present evidence that its claims were not barred by the statute of limitations when briefing motion for summary judgment was precluded from presenting such evidence on appeal); All State Fin. Corp. v. Financorp., 934 F.2d 55, 58-59 (4th Cir. 1991) (affirming entry of summary judgment where party failed to proffer evidence to contravene evidence proffered by movant).

Nevertheless, even the additional deposition excerpt quoted in PVB's brief does not advance PVB's argument on appeal. The quotation now relied upon by PVB again shows that JMM was seeking assurances that Grahams would still pay for materials in the event that JMM *did not do the work*. (JA 180). This bolsters the District Court's conclusion that JMM was seeking to protect its own financial interest.

**D.    PVB's Remaining Objections to the District Court's Ruling Are Without Merit.**

Finally, the remaining arguments asserted in Section II of PVB's brief are without merit, and none of PVB's other contentions are grounds to reverse the District Court.  First, PVB relies upon <u>Jones v. Koons Automotive, Inc.</u>, 752 F. Supp.2d 670 (D. Md. 2010), which the District Court properly found to be distinguishable. (JA 326).  In <u>Jones</u>, a dealer sold a customer a used car, took a trade-in of the customer's vehicle, and expressly agreed to pay off the remaining amount that the customer owed to the lienholder on the trade-in vehicle.  In contrast to the present case, the car dealer in <u>Jones</u> expressly agreed to satisfy the customer's obligation by paying the remaining balance on the trade-in vehicle directly to the lienholder as consideration for the new sales transaction. <u>Jones</u>, 752 F. Supp.2d at 675, 689-90.  The Court in <u>Jones</u> allowed the lienholder to intervene in a lawsuit between the customer and the dealer to seek payment from the dealer because it was clear from both the express language of the sales contract and the surrounding circumstances that the dealer had agreed to assume the customer's obligation to pay the third-party lienholder as part of the consideration for the sales transaction.  <u>Id.</u> at 689-90.

The District Court properly concluded that none of the elements of <u>Jones</u> are present in this case and that, at most, PVB was only incidentally named in the August 22nd email (as the source of the materials ordered by JMM). (JA 326).

Unlike the lienholder in <u>Jones</u>, PVB does not—and cannot—identify any similar undertaking by Grahams to assume JMM's liability to PVB. Unlike in <u>Jones</u>, there is no evidence that Grahams expressly agreed to pay PVB directly for the materials under its Subcontract with JMM. Nor can any such promise be inferred from the surrounding circumstances. On the contrary, PVB itself acknowledges that all of the payments it received on the Project (all of which occurred after the August 22nd email) came from JMM—and not Grahams. (JA 31 at ¶ 31). Thus, as the District Court properly concluded, at most, PVB can only establish that it was an incidental beneficiary of payments that Grahams made to JMM under its Subcontract. (JA 327).

Next, PVB contends that the knowledge of the agreement is not an absolute requirement to prove third-party beneficiary status. The District Court, however, did not rest its holding solely upon PVB's admitted lack of knowledge of the August 22nd email. Rather, the District Court merely considered PVB's lack of knowledge as one factor in concluding that PVB was not the primary party in interest to the email. Further, on this point, PVB relies solely upon inapposite cases from other jurisdictions where a third-party beneficiary enforced a right expressly conferred upon the third party under the terms of a contract. <u>See</u> <u>Ohio Casualty Ins. Co. v. Beckwith</u>, 74 F.2d 75 (5th Cir. 1934); <u>West Chelsea Bldgs. v. United States</u>, 109 Fed. Cl. 5, 23 (2013); <u>In re Estate of Fanning</u>, 333 N.E.2d 80

(Ind. 1975); <u>Lincoln Nat. Life Ins. Co. v. Means</u>, 95 S.W.2d 264 (Ky. 1936). These cases are plainly distinguishable from the facts here, where Grahams made no express promise to pay PVB directly for any materials purchased from JMM.

Finally, it appears that PVB's appellate brief erroneously attempts to invoke the law of guaranty, asserting that Grahams provided "an absolute guaranty of payment" that purportedly entitled PVB to bring its claim against Grahams without first providing notice or asserting a claim against JMM. (PVB Brief at ¶¶ 12-13). To the extent that PVB now seeks to argue that it received a guaranty directly from Grahams, PVB's argument is misplaced.  First, in briefing summary judgment, PVB disavowed any right to assert a claim directly against Grahams under the law of guaranty; as such, PVB is estopped from asserting a claim directly against Grahams under a guaranty theory.  <u>E.g.</u>, <u>United Virginia Bank/Seaboard Nat'l v. B. F. Saul Real Estate Inv. Trust</u>, 641 F.2d 185, 189-90 (4th Cir. 1981).

In addition, PVB did not—and cannot—establish that the August 22nd email was a guaranty issued by Grahams directly to PVB.  A guaranty is a tripartite contract between a guarantor, its principal, and an obligee whereby the guarantor promises to perform the principal's obligations if the principal does not.  <u>E.g.</u>, <u>General Motors Acceptance Corp. v. Daniels</u>, 492 A.2d 1306, 1309-10 (Md. 1983). To be valid, a guaranty must be in writing, signed by the guarantor, and otherwise compliant with the Statute of Frauds, supported by separate consideration, and

29

must be delivered to and accepted by the obligee. Id.; see also John McShain, Inc. v. Eagle Indem. Co., 23 A.2d 669, 670 (Md. 1942) (addressing delivery and acceptance requirement); Roberts v. Woven Wire Mattress Co., 46 Md. 374, 386-87 (1877) (same). PVB itself relies upon a case where the guarantors provided the letter of guaranty and delivered it directly to the creditor in consideration for the creditor employing the principal. Continental Oil Co. v. Horsey, 3 A.2d 476, 478 (Md. 1939). Here, PVB cannot establish the elements of a guaranty contract, as PVB concedes that it did not request a guaranty from Grahams, it was not a party to the August 22nd email, and did not receive the email until discovery.

## III. THE DISTRICT COURT'S DISMISSAL OF PVB'S THIRD-PARTY BENEFICIARY CLAIM SHOULD BE AFFIRMED FOR OTHER REASONS PRESENTED IN GRAHAMS' CROSS-MOTION FOR SUMMARY JUDGMENT ON COUNT II.

Grahams respectfully submits that summary judgment was properly entered on Count II in favor of Grahams for several other reasons that were not expressly addressed in the District Court Memorandum Opinion. First, in granting summary judgment to Grahams on Count II, the District Court assumed, but did not conclude, that the August 22, 2012 email was a contract between JMM and Grahams. (JA 324). Based upon the undisputed record, it is clear that the August 22, 2012 email was not a new contract between Grahams and JMM. Second, in the context of payment bond claims, courts have consistently rejected similar third-party beneficiary theories asserted by lower-tier claimants (such as PVB) that

30

missed their required deadlines to assert a claim under the general contractor's payment bond; in such cases, the claimants are merely incidental beneficiaries of any payment arrangements between the general contractor and subcontractor.

### A.    The August 22, 2012 Email Is Not a New Contract between Grahams and JMM.

PVB's entire third-party beneficiary claim is predicated upon the erroneous assumption that the August 22, 2012 email is a valid and enforceable contract between Grahams and JMM, to which PVB purports to be a third-party beneficiary.  PVB assumes, but cannot demonstrate, that the August 22, 2012 email was a new contract, and PVB's assumption is incorrect.  On the contrary, the undisputed record reflects that Grahams and JMM were merely addressing arrangements to obtain the materials required by the subcontract in the event that Grahams had to hire another mason to install them.

It is uncontroverted that, as of August 2012, JMM had already been under contract with Grahams for over five months. (JA 132 at ¶ 5; JA 134 at ¶ 15).  JMM had signed and returned its Subcontract with Grahams five months earlier, on March 14, 2012, and JMM had begun performing this Subcontract. (JA 132 at ¶¶ 5-6).  Under its Subcontract, JMM was already obligated to furnish all labor, materials, and equipment necessary to construct the masonry walls for the Project, and Grahams was already obligated to pay JMM its Subcontract price for this

work.[6] (JA 132 at ¶ 4). JMM would have been in default and subject to termination for cause under Paragraph 4 of the Subcontract if it failed to furnish the required materials. (JA 99 at ¶¶ 4.1).  As such, JMM had already ordered materials from PVB on August 21, 2012, Grahams' prior direction. (JA 132-133 at ¶¶ 8, 12). Thus, to the extent that the August 22, 2012 email addresses payment for materials if JMM remained under contract to perform the work, this email does not reflect any new exchange of promises or consideration between JMM and Grahams.

PVB erroneously argues that JMM exchanged sufficient consideration for Grahams' purported payment promise (set forth in the August 22nd email) because, according to PVB, JMM did "did not walk off the job" and abandon its Subcontract. (PVB Brief at 22-23).  PVB's argument fails for two reasons.  First, PVB's argument is based upon nothing more than its own conjecture. There is no evidence in the undisputed record to support PVB's contention that JMM intended to "walk off the job" if Grahams did not agree to pay for materials ordered from PVB.  Nor is there any logical coherence to PVB's argument.  PVB does not—and cannot—explain how JMM's concern about its lack of manpower to install the brick (which prompted JMM's request) would be cured by Grahams' purported promise to pay for materials.

---

[6] Notably, JMM's Subcontract makes no mention of PVB, and PVB does not attempt to claim any rights arising under the Subcontract.

Second, PVB's argument fails because it is a bedrock principle of contract law that a party's promise to perform an obligation that it is already under contract to perform is not new consideration. Linz v. Schuck, 106 Md. 220 (1907). Here, the pre-existing subcontract obligations of Grahams and JMM did not change as a result of the August 22nd email. JMM was still obligated to purchase and install the materials, and Grahams was still obligated to pay for them. PVB erroneously assumes that JMM was legally entitled to "walk off" the Project merely because its circumstances had changed. On the contrary, JMM was contractually obligated to furnish (and install) the masonry materials under its Subcontract and JMM would have been terminated for default and liable to Grahams for damages (under Paragraph 4 of the Subcontract) if it had walked off the job, as PVB suggests. Nor did Grahams offer any additional compensation or other consideration to JMM in its August 22nd email. Rather, Grahams merely confirmed that JMM must purchase the materials (as required by its Subcontract), irrespective of whether JMM or another mason erected the masonry walls.

PVB's reliance upon Linz and King v. Duluth, M. & N. R. Co., 61 Minn. 482 (1895)[7] is misplaced. Contrary to PVB's contention, both of these cases merely re-affirm the fundamental rule of contracts that a party's promise to perform an obligation that it is already under contract to perform is not new

---

[7] PVB relied upon King in the District Court, but omitted this case from its appellate brief.

consideration. <u>Linz</u>, 106 Md. at 228; <u>King</u>, 61 Minn. at 487. The court in <u>Linz</u> applied a narrow exception to this rule where the contractor proved at trial that it had encountered unforeseen underground conditions in excavating for a cellar (i.e., swampy, mucky soil) which prevented it from performing the work and excused its original performance; the court found that the owner's oral agreement to pay the contractor's additional costs to perform extra work to remove the unsuitable soil was supported by adequate consideration because the subsurface conditions were unforeseen when the parties originally agreed to the contract price. <u>Id.</u>, 106 Md. at 229-30. Thus, the contractor performed additional unforeseen work in <u>Linz</u> for which it received additional compensation as consideration.

In contrast, the court in <u>King</u> found that the contractor was not entitled to recover its extra costs incurred in performing clearing and grading work required by its contract because the court believed that the conditions encountered (i.e., frozen ground) did not rise to the level of substantial, unforeseen circumstances. <u>Id.</u>, 61 Minn. at 489. Accordingly, the court held that the owner's alleged promise to pay additional compensation to the contractor in exchange for the contractor continuing the work failed for lack of consideration. <u>Id.</u>

The present facts are nothing like <u>Linz</u> or <u>King</u>. PVB did not—and cannot—identify any substantial, unforeseen circumstances that would have excused JMM's performance. The injury to JMM's project manager did not

excuse JMM's obligations to Grahams, and PVB's vague reference to delays does not justify invoking the narrow "unforeseen circumstances" outlined in <u>Linz</u> (particularly because the Subcontract here addresses contractual remedies for delay, including in Paragraphs 3, 8, and 9, <u>see</u> (JA 99, 101-102). Further, unlike <u>Linz</u> and <u>King</u>, it is undisputed that JMM remained on the Project under its original Subcontract terms, i.e., to furnish and install the masonry walls at its original Subcontract price. Even under PVB's own argument, PVB merely contends that JMM was induced to continue working under its original Subcontract terms as a result of Grahams' alleged guarantee to pay for the materials ordered from PVB. In sum, neither Grahams nor JMM exchanged any new consideration as part of the August 22, 2012 email—Grahams and JMM merely carried through in performing their original obligations under the Subcontract.

> **B.** **PVB's Third-Party Beneficiary Claim Is an Improper Attempt to Circumvent the Miller Act and Privity of Contract.**

PVB's third-party beneficiary claim asserted in Count II also fails because it is merely an attempt to recast PVB's expired Miller Act claim (asserted in Count I) under a different legal theory. The District Court properly dismissed Count I because PVB failed to comply with the notice requirements set forth in the Miller Act, 40 U.S.C. § 3133(b)(2). (JA 311-320). PVB has not appealed the District Court's ruling, conceding that its Miller Act claim was properly dismissed as untimely.

Instead, PVB has improperly attempted to recover the same damages under its third-party beneficiary theory asserted in Count II.  This tactic has been attempted and rejected many times before.  Courts construing Miller Act and state "Little Miller Act" claims have repeatedly rejected third-party beneficiary claims brought by lower-tier suppliers (such as PVB, here) based upon payment arrangements made between the general contractor and first-tier subcontractor.  E.g., Noland Co. v. Armco, Inc. 445 A.2d 1079, 1081 (Md. Ct. Spec. App. 1982) (citing United States ex rel. Davison v. York Elec. Constr. Co., 184 F. Supp. 520 (D.N.D. 1960); United States ex rel. Fordham v. P.W. Parker, Inc., 504 F. Supp. 1066 (D. Md. 1980); accord United States ex rel. State Elec. Supply Co., Inc. v. Hesselden Constr. Co., 404 F.2d 774 (10th Cir. 1968)); United States ex rel. Henry Walke Co. v. Van de Riet, 316 F.2d 912 (4th Cir. 1963).  These cases uniformly hold that a lower-tier supplier may not circumvent the statutory 90-day notice requirement by asserting that it was a purported third-party beneficiary to payment arrangements made between a general contractor and its first-tier subcontractor. Id.

The Armco decision is exactly on point.  There, the Maryland Court of Appeals affirmed the trial court's dismissal of a third-party beneficiary claim asserted against the general contractor by a lower-tier supplier that had not been paid by the first-tier subcontractor.  As in this case, the supplier did not provide the

36

statutory notice to the general contractor.  The supplier attempted to assert that it was a third-party beneficiary to a purported "agreement" set forth in a letter from the general contractor's project manager to its subcontractor.  The letter in <u>Armco</u> (which is strikingly similar to the August 22nd email relied upon here), stated:

> We agree to pay for materials to be incorporated into either of these projects.  Shipping papers and invoices should show consignment to the specific project.  Invoices should be sent to you for your approval.  You can give them to us for payment….

<u>Armco</u>, 445 A.2d at 1080.

Citing analogous Miller Act cases, the court in <u>Armco</u> concluded that the supplier could not rely upon this letter to assert a claim predicated upon either an express or implied contract with the general contractor or a third-party beneficiary theory. <u>Id.</u> at 1081. Nor could the supplier rely upon this letter to excuse its non-compliance with the 90-day statutory notice requirement.  <u>Id.</u>  In reaching this conclusion, the court reasoned, as in the present case, that the supplier was not a party to the letter, did not contemporaneously receive a copy of the letter, and was not even aware of the letter's existence.  <u>Id.</u>

The <u>Armco</u> court also noted that even agreements by a general contractor to issue payment by joint-check directly to the lower-tier supplier and subcontractor are insufficient to establish a direct or third-party beneficiary claim by a lower-tier supplier.  <u>Id.</u>, 445 A.2d at 1081.  The court reasoned that if "even an agreement on the part of the general contractor to issue checks to the subcontractor and its

37

suppliers *jointly* does not suffice to create a direct (or third-party beneficiary) contractual relationship between the supplier and the general contractor. If a 'joint check' arrangement does not create the required contractual relationship, it is clear that [general contractor's] letter to [subcontractor] cannot have that effect." Id.

The present case is on all fours with Armco. PVB did not request any payment guarantee from Grahams, was not even aware of the August 22, 2012 email (or the prior discussions referenced therein), and does not obtain any express right to payment under the email. (JA 134 at ¶ 11; JA 135 at ¶ 17, 18; JA 234). Nor was PVB paid directly by Grahams. (JA 31 at ¶31). Therefore, as in Armco (and the authorities cited therein), PVB cannot assert third-party beneficiary status based upon the August 22, 2012 email from Grahams to JMM.

PVB's argument, if accepted, would eviscerate the legal requirement of privity of contract in Miller Act cases. The arrangement on this Project, where the contractor pays for materials that its subcontractor purchased from a lower-tier supplier, is common-place in the construction industry and creates many incidental beneficiaries. E.g., National Labor College, Inc., 739 F. Supp.2d at 836 (quoting Restatement (Second) of Contracts § 302(1), cmt. E, illus.).

The remedy for the subcontractor's non-payment in this circumstance is the Miller Act, which affords protection to lower-tier subcontractors and suppliers under the payment bond (provided they satisfy the statutory requirements). 40

U.S.C. § 3133(b)(2). PVB, however, failed to timely file its Miller Act claim and lost its rights to claim against Grahams. PVB should not be permitted to circumvent the rules of privity by re-casting its expired Miller Act claim under a third-party beneficiary theory.

Finally, even if construed as a payment guaranty, Grahams' August 22, 2012 email would be a conditional guarantee. The undisputed record makes it clear that JMM had requested payment arrangements that would apply in the event that JMM were released from its Subcontract. (JA 135 at ¶ 17). Since this condition never occurred, any such conditional guarantee requested by JMM became moot. E.g., Dickerson v. Longoria, 995 A.2d 721, 742 (Md. 2010) (stating that a third-party beneficiary's rights are subject to the same defenses against the enforcement of the contract as exist between the original promisor and promise); Noland Co. v. Armco, Inc. 445 A.2d 1079, 1081 (Md. Ct. Spec. App. 1982) (stating that even if letter from general contractor to subcontractor were construed as guaranty for the benefit of third-party supplier, such guaranty was conditional were not satisfied).

Accordingly, the District Court had ample additional grounds to grant summary judgment in favor of Grahams on Count II.

IV. **PVB IS NOT, UNDER ANY CIRCUMSTANCES, ENTITLED TO SUMMARY JUDGMENT AND ENTRY OF FINAL JUDGMENT UNDER RULE 54(b).**

Finally, PVB erroneously argues that, not only should this Court reverse the District Court, but also that this Court should enter judgment in PVB's favor on Count II and certify a final judgment under Rule 54(b). PVB's arguments are moot because the District Court properly entered judgment in Grahams' favor on Count II. In addition, PVB's argument is entirely predicated upon disputed facts. Specifically, in response to PVB's cross-motion for summary judgment, Grahams disputed both entitlement and the amount of PVB's alleged damages. (JA 155-156 at ¶¶ 32, 37). Grahams also disputed PVB's contention that Grahams received full payment from the Government and improperly retained funds from JMM. (JA 154 at ¶ 30). Thus, even assuming arguendo that PVB could establish the other elements of a third-party beneficiary claim, the disputed factual record would preclude an award of damages and entry of final judgment in PVB's favor on appeal.

## CONCLUSION

The District Court properly applied Maryland law in concluding that PVB was not the intended beneficiary of Grahams' August 22, 2012 email. PVB has failed to identify any errors in the District Court's legal analysis. Rather, PVB's argument merely assumes—but never proves—that Grahams and JMM intended to

confer benefits directly upon PVB. PVB's arguments presented at the District Court and on appeal are without merit. The District Court's ruling should be affirmed and PVB's appeal should be dismissed, with all applicable costs taxed against PVB.

Dated:  August 11, 2014                    Respectfully Submitted,


/s/ Christopher M. Anzidei
Christopher M. Anzidei, Esq.
Law Offices of Christopher Anzidei, PLLC
8381 Old Courthouse Road, Suite 160
Vienna, VA 22182
(P) 703-388-0614
(F) 703-388-0087
ChrisAnzidei@AnzideiLaw.com
*Attorney for Appellees Grahams Construction, Inc. The Guarantee Company of North America, USA*

## <u>UNITED STATES COURT OF APPEALS</u>
## <u>FOR THE FOURTH CIRCUIT</u>

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.    This Brief complies with the type-volume limitation of Fed. R. App. P.
      32(a)(7)(B) because:

          this Brief contains <u>9,778</u> words, excluding the parts of the Brief
          exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This Brief complies with the typeface-requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

          this Brief has been prepared in a proportional spaced typeface
          using <u>Microsoft Word</u> in <u>14 Time New Roman</u>.

Dated:   August 11, 2014          <u>/s/ Christopher M. Anzidei</u>
                                  Christopher M. Anzidei, Esq.
                                  Law Offices of Christopher Anzidei, PLLC
                                  8381 Old Courthouse Road, Suite 160
                                  Vienna, VA 22182
                                  (P) 703-388-0614
                                  (F) 703-388-0087
                                  ChrisAnzidei@AnzideiLaw.com
                                  *Attorney for Appellees Grahams*
                                  *Construction, Inc. and The Guarantee*
                                  *Company of North America, USA*

42

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I HEREBY CERTIFY, that on this 11th day of August, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

> Frank J. Emig, Esq.
> Law Offices of Frank J. Emig
> 8337 Cherry Lane
> Laurel, MD  20707
> Telephone: 301-345-7002
> Email: frankemig@msn.com
> *Attorney for Plaintiff-Appellant Potomac Valley Brick*
> *and Supply Company*

> /s/ Christopher M. Anzidei
> Christopher M. Anzidei, Esq.
> Law Offices of Christopher Anzidei, PLLC
> 8381 Old Courthouse Road, Suite 160
> Vienna, VA 22182
> (P) 703-388-0614
> (F) 703-388-0087
> ChrisAnzidei@AnzideiLaw.com
> *Attorney for Appellees Grahams*
> *Construction, Inc. and The Guarantee*
> *Company of North America, USA*